## NATIONAL HAT-POUNCING MACH. CO. *v.* BROWN.

### SAME *v.* HEDDEN *et al.*

*(Circuit Court, D. New Jersey. September 25, 1888.)*

1. PATENTS FOR INVENTIONS—ANTICIPATION—HAT-POUNCING MACHINES.
   Claim 2 of letters patent No. 97,178, granted to Rudolph Eickemeyer, for an improvement in hat-pouncing machines, claiming the arrangement and combination of a rotating pouncing cylinder, with a vertical supporting horn of such small size that the hat may be freely turned thereon, and the tip, side crown, and rim pounced in a single operation, is not anticipated by practical use by the act of pouncing in one operation on the Nougaret machine, which

employs a long horn, on which the hat cannot be freely turned and pounced in a single operation, unless by twisting, and stretching it out of shape, in a manner for which the machine was not intended.

**2. SAME.**

Claim 2 of the Eickemeyer patent anticipated claim 5 of patent No. 220,889, granted to E. B. Taylor, describing the combination of the supporting horn and the self-feeding pouncing cylinder, whereby the hat is drawn over the support in the direction of the motion of the cylinder, restrained by the hand, assisted by a guard or pressing pin, as the former patent is for the combination by which the whole hat can be pounced in a single operation; and, though feed-rollers are used, drawing the hat in the opposite direction from the motion of the cylinder, yet the Taylor patent simply restores the direction in which the hat would be carried by the cylinder without the feed-rollers, which is immaterial to the principle of the invention.

In Equity.

*Eugene Treadwell* and *John R. Bennett*, for complainant.

*A. Q. Keasbey* and *E. Q. Keasbey*, for defendants.

BRADLEY, Justice. These suits are each brought on two patents owned by the complainants,—one granted to Rudolph Eickemeyer, November 23, 1869, and the other granted to Edmund B. Taylor, October 21, 1879, —each for improvements in machines for pouncing hats. The claims which are at issue are the second claim in the Eickemeyer patent, and the fifth in the Taylor patent. Pouncing hats is much the same thing as shearing cloth; consisting in the removal of the fuzz or rough surface of wool or fur which remains on the fabric after it is felted or woven, as the case may be. It was formerly done by hand, by rubbing the surface of the hat body with sand-paper or emery while holding the brim firmly on the table, and stretching the crown on a block. The irrepressible genius of the inventor has, of course, produced machinery that does the same thing, and does it better, almost automatically. A horizontal cylinder or cone, covered with emery or some other cutting or grinding substance, is attached to a spindle, and made to revolve with great rapidity, and the surface of the hat is brought into contact with it. This accomplishes the object. The principal difficulty lay in bringing every part of the hat body, which has a very irregular shape, into equal and perfect contact with the emery cylinder. For a long time separate machines had to be employed for the brim and the crown. The former was drawn by separate conical rollers, so shaped as to give the hat a circular movement, between the revolving cutting cylinder and a rest or support, which, being operated by a treadle, or fixed in proper position by a set-screw, kept the brim in contact with the cylinder. The movement of the hat was somewhat regulated by the hand. The crown was stretched on a revolving block, and thus exposed to the pouncer. The object of the machines which are the subjects of the patents sued on is to pounce the whole hat, both brim and crown, by one operation, without the use of separate machines. This is effected by constructing the rest by which the hat is supported in contact with the cutting cylinder in such a form, and adapting it to such an operation, that all parts of the hat body may be brought into the desired contact. The rest, instead of being a long roller, or fixed bearing, like that of a lathe, parallel with the sides of the

cutting cylinder, is more like a horn with a nob, or short bearing, which will support the brim, the crown, and the tip successively against the cylinder, manipulated and turned about, in part by hand, and in part by an accessory roller or rollers. This could not be done successfully on the old machines, because the crown could not be slipped over the elongated rest, and, if this could have been done, there was no room for the brim between the rest and the body of the machine. Eickemeyer's patent comprehends other matters besides that which forms the particular subject of the second claim, and they do not require notice. The invention in question is described in the specification as follows:

"My invention further consists in an arrangement of the pouncing cylinder and a rest or supporting horn for the hat body, which can be introduced within the crown to support it against the cutting action of the pouncing cylinder during the operation of pouncing, the arrangement being such as to dispense with the use of a hat block in pouncing the tips and side crown of the hats."

The specification describes in detail the mode of attaching and adjusting the supporting horn so as to adapt it to the pouncing of the different parts of the hat, and adds this important suggestion:

"The essential part of the arrangement of the supporting horn being the space left between it and the lathe-head to give room for the brim while it is supporting the tip in the operation of pouncing."

The second claim of the patent is in the words following, to-wit:

"I claim (2.) The arrangement and combination of a rotating pouncing cylinder with a vertical supporting horn, substantially as described, whereby the supporting horn may be used to support the tip, side crown, or brim during the operation of pouncing the hat."

It cannot be denied that the improvement was a great advance in the art of manufacturing hats. The patent was the subject of consideration in a suit brought by the complainant against one Thom *et al.* in the circuit court for the district of Massachusetts, and was sustained in an able opinion delivered by Judge COLT. 25 Fed. Rep. 496. The defendants in that case contended that the Eickemeyer patent was void for want of utility; that the machine never came into market, etc. It was also contended that the invention was substantially anticipated by the Nougaret machines, which had been patented in 1866, and that the whole hat body could be, and had been, pounced on those machines. The judge disposed of these objections as follows:

"The defendants contend at the outset that the Eickemeyer patent is void for want of utility. The Eickemeyer machine never came into the market. It appears that the only machines built were those used in this suit. In view of the fact, however, that the evidence shows that a machine made after the Eickemeyer patent is practically operative for pouncing hats in the manner described, this defense falls to the ground. The Taylor machine may be an improvement on Eickemeyer's, by reason of avoiding the necessity of feed-rollers, and by reason of its simplicity of construction; and it may, in consequence, be very valuable commercially, and the best pouncing machine in use; but this will not protect Taylor or the defendants in the use of the specific mechanism described in the specification, and embodied in the claims of the Eickemeyer patent; provided, as has been shown, that the Eickemeyer ma-

chine is operative for the purpose it was designed. But the main controversy is over the second claim of the Eickemeyer patent, which described the combination of a rotating pouncing cylinder with a vertical supporting horn, wherein the horn is used to support the whole hat body during the operation of pouncing. It is said that the Nougaret machines anticipate, in substance, this claim. It is apparent, however, that the Nougaret machines employ a long horn. They do not make use of a supporting horn of such a small size that the hat may be freely turned thereon, and so supported in the machine as to leave the space described in the patent, in order that the hat may be freely turned, so as to pounce all parts of the surface thereof; and we find no prior machine so organized. This is not a formal, but a material, difference, and this difference is the essence of the Eickemeyer invention. It is further urged that you could pounce the whole hat body in a Nougaret machine; that it has been done repeatedly; and that consequently the second claim of the Eickemeyer patent should receive a narrower construction than if Eickemeyer had been the first to accomplish such a result. Admitting that, to a limited extent, the Nougaret brim-machine has been employed to pounce the whole hat body, yet such was not its ordinary use. Before the invention of Eickemeyer it was generally understood that it required two sets of mechanism to pounce a hat. But, however this may be, the complainant has demonstrated that the employment of a short rest, with the vertical space for the brim of the hat while the tip is being pounced, which we find in Eickemeyer's machine, is a great improvement over the long rest as used in machines of the Nougaret type. This is not the case of a trifling improvement, but, in view of what had been before accomplished, of a substantial advance in the art; and consequently no mere changes in the details of construction should relieve a party from the charge of infringement."

The decision in the Massachusetts case goes far to decide the present cases. I am entirely satisfied with the reasoning of the learned judge, and consider that the essential facts relied on by the court are established in the cases now before us. In that case the defendants, in addition to the grounds disposed of in the above extract, placed themselves upon the Taylor patent, (since acquired by the complainant, and now sued on,) under which they claimed to be acting, and contended that they did not infringe the patent of Eickemeyer. This defense was also overruled, and it was held that the diversities in the modes of operation in the two machines did not relieve the defendants from the charge of infringement. In the one machine (Eickemeyer's) the hat, by the action of the feed-rollers, is pulled through the machine in the opposite direction to the rotation of the pouncing cylinder, while in the Taylor machine it moves in the direction of the rotation of the pouncing cylinder. Other variations in the modes of operation of the two machines were relied on, but the court did not deem these variations as material, so long as the defendants used the essential elements of a short rest, and space for the brim, as shown in Eickemeyer's patent. Taylor might have made improvements, but he used Eickemeyer's invention.

In the present case the great effort on the part of the defendants has been to show that, so far as the defendants can be charged with any infringement of the patents sued on, the defendant Brown anticipated the inventions by practical use; and that, if this be not proved to the satisfaction of the court, still the fifth claim of Taylor's patent is identical

with the second claim of Eickemeyer's, and is therefore void, and no injunction should be decreed, because Eickemeyer's patent expired two years ago. There can be no doubt that the machines used by the defendants do infringe the second claim of the Eickemeyer patent. They have a supporting horn surmounted by a short rest, situated sufficiently far from the body of the machine to give room for the brim, and on which the hat body, in all its parts successively, is supported against the cutting cylinder. This is as clear an infringement as could well be described. The question is, did Brown use any such device for pouncing hats prior to the 15th day of July, 1869? the date of the jurat affixed to Eickemeyer's application for a patent. The application was filed in the patent-office on the 17th of July, and contained the same description of the invention and second claim as they appear in the patent itself. We do not hesitate to say that there is no proof of any such use. The most that can be said is that Brown, according to his testimony, sometimes stretched out a hat body over the long rest of the Nougaret machine, which he used, so as to pounce nearly the whole surface, tip and all. But suppose he did this; it was not the process of pouncing the whole hat body in one operation that was patented by Eickemeyer, but the machine for doing it. Brown never made any such machine. And if he succeeded, as he says, in pouncing hat bodies in one operation on the Nougaret machine, he must have stretched them much out of shape; and, as Judge COLT says, such was not the ordinary use of the machine.

On the Taylor patent several questions arise: *First.* Was the fifth claim void by reason of being anticipated by the second claim of the Eickemeyer patent? If not, was it void for not being patentable? If not, was it anticipated by Brown? If not, has it been infringed by the defendants? (1) Was it anticipated by the second claim of the Eickemeyer patent? In order to answer this question satisfactorily it will be necessary to examine carefully the purport of the Taylor patent, and what invention, in view of the prior Eickemeyer patent, it was intended to secure to the patentee. The object of the invention is stated as follows:

"The object of my invention is to dispense with feed-rolls and hat-blocks in machines for pouncing hats, to make the cutting or pouncing cylinder self-feeding, to enable the operator to control the speed and direction in which the hats to be pounced pass over the cutting or pouncing surface by the hand with the assistance of a guard and presser pin, and to cause the material to be pounced to move in the same direction as the surface of the self-feeding cutter in contact with it, thereby avoiding the injurious strain to which it is subjected in ordinary hat-pouncing machines with feed-rolls or their equivalents."

The specification then goes on to describe the machine in detail by the aid of the drawings attached to the patent; from which it appears that the short rest of Eickemeyer is·used, and the hat body is allowed to be drawn through between the rest and the pouncing cylinder by the force of the latter, being held back and guided by the hand, the hand being protected by a guard, and the guard being furnished with a pin attached to a spring, which pin may be pressed down upon the hat to hold or re-

tard it at the point of pressure, and cause it to move in a circle around the pin as a center, when required for pouncing different parts of the hat body. All these parts are secured by separate claims. The fifth claim is as follows: I claim:

"(5) The combination of the support for the hat and the self-feeding pouncing cylinder, whereby the hat is drawn over the support in the direction of the motion of the pouncing cylinder."

It is manifest that this claim is for the support and the self-feeding pouncing cylinder, independent of the guard and presser pin. It is equally manifest, in view of the Eickemeyer patent, which is not to be repeated if a different construction is admissible, that the claim is not for the combination of a short support and a cutting cylinder generally, (which would clearly be a repetition of Eickemeyer's second claim,) but is for the combination of the support and a self-feeding pouncing cylinder; that is, a machine without feed-rollers, or any other feeding device except the pouncing cylinder itself. Is not this, after all, Eickemeyer's machine without the feed-rollers; and is it not precisely what is contained in Eickemeyer's second claim, except that the latter covers both kinds—self-feeding and non-self-feeding pouncing cylinders? It is not an improvement on Eickemeyer's invention; it is the same thing. Eickemeyer's second claim is for the support and the pouncing cylinder independent of feed-rollers. This was so decided in *Thom's Case*, before cited. That is, it was for the combination of the support and the pouncing cylinder, whether you used feed-rollers or not. If you did not use them, your machine would be a self-feeding machine, of necessity; for the pouncing cylinder, if not interfered with, will always carry the hat body with it. The very object of the feed-rollers was to counteract this tendency, and thus secure a more effective operation of the cutting or pouncing instrument. If some resistance were not interposed to the force of the revolving cylinder, it would carry the hat body with itself so rapidly that the rough surface would not be cut away, or would be only partially cut away. Hence, in the absence of feed-rollers, the hat body must necessarily be held back by hand. It was partially controlled by the hand even with the feed-rollers. Without them, it must be wholly so controlled. So that Taylor's supposed invention, as embodied in his fifth claim, is but one of the necessary forms of Eickemeyer's, as embodied in his second claim; not only one of the necessary forms, but having the same mode of operation involved in the latter. The counsel for the complainant endeavor to meet this view by contending that Taylor's fifth claim is for a process. But there is no pretense of that kind in the patent itself, nor in the language of the claim. The claim is for a machine having a certain necessary mode of operation. The result is that the complainant is entitled to decrees for profits and damages for the infringement by the defendants of the Eickemeyer patent while it continued in force, and the bills must be dismissed so far as regards the Taylor patent, and the injunctions must be dissolved. We think that each party should pay their own costs.