BARNES AUTOMATIC SPRINKLER CO. *v.* WALWORTH MANUF'G CO. *et al.*

*(Circuit Court, N. D. Illinois.* June 8, 1892.)

PATENTS FOR INVENTIONS—NOVELTY—AUTOMATIC FIRE EXTINGUISHER.
    The third, fourth, and fifth claims of letters patent No. 233,393, issued October 19, 1880, to Charles Barnes for an automatic fire extinguisher, which claims are for a valve-releasing device, consisting of wires, a lever, and a fusibly jointed slide, and the combination of a perforated distributer, a valve located in the distributer, having a stem which projects through the shell of the distributer, and a lever to hold the valve to its seat, are void for want of novelty.

In Equity.    Bill by the Barnes Automatic Sprinkler Company against the Walworth Manufacturing Company and others for an injunction and an accounting.

*West & Bond,* for complainant.
*James J. Myers,* for defendants.

BLODGETT, District Judge.    In this case the complainant seeks an injunction and accounting by reason of the alleged infringement of patent No. 233,393, granted October 19, 1880, to Charler Barnes for an "automatic fire extinguisher."    The patent in question concerns that class of devices which are intended to extinguish incipient fires by automatic means, whereby any unusual heat releases the water and puts the device in action.    This is by no means a foundation patent, but is, and only purports to be, an improvement upon prior devices of the same class.    The inventor says in his specifications:

"The object of this invention is to provide a supply valve, which will be more easily and securely forced and held to its seat, and more readily released therefrom."

"A further object is to relieve the valve-sustaining device from the strain consequent upon the expansion and contraction of the valve closing and releasing wires under varying temperatures."

"Another object is to relieve the fusible solder joints from strain, so that they may be made more sensitive to heat without liability of parting except in case of fire."

"Its object is, finally, to provide a means to hold the valve seated within the distributer securely to its seat, without liability of fracturing the solder joint by which it is held, by expansion and contraction of the metal."

The patent contains seven claims, but infringement is charged only as to the third, fourth, fifth, and sixth, which are:

"(3) A valve-releasing device for automatic fire extinguishers, consisting of wires, C, lever, H, and fusibly jointed slide, I, combined to operate substantially as set forth.    (4) In an automatic fire extinguisher, the combination, substantially as set forth, of a perforated distributer, a valve located within said distributer, and having a stem which projects through the shell of the distributer, and a lever, as $K^1$, to hold the valve to its seat within the distributer until its fusible joint, $K^3$, is released by heat.    (5) In an automatic fire extinguisher, the combination, substantially as specified, of a perforated distributer, provided with a valve, the stem of which projects through the distributer shell, with a jointed lever, $K^1$, and latch $K^2$, said latch resting upon a projection on the shell of the distributer, and secured thereto by

fusible solder to hold the valve to its seat. (6) In an automatic fire extinguisher, the combination of a perforated distributer, and a valve to control the supply of water to said distributer, said valve provided with a two-part stem, and an elastic cushion between the parts, to hold the valve to its seat with elastic pressure by fusible solder, substantially as specified."

The defenses interposed are: (1) That the patent is void for want of novelty; (2) that defendants do not infringe.

I was considerably embarrassed on the hearing of this case by the assertion on the part of complainant that this patent had been, in a suit brought by Barnes and another against Ruthenberg, after full hearing before the United States district court for the southern district of Ohio, sustained as a valid patent by the learned district judge then presiding, (Judge Sage). 32 Fed. Rep. 159. But an examination of the allegations of the bill and proofs thereunder as to the matters of defense set up in that case shows that the proofs in this case upon the issue of novelty are much more full and exhaustive than they were in the case before Judge Sage, and that the prior patents cited here, which seem to me most material to the defense, were not before that court. In other words, the proofs in this case differ so essentially from those in the former case that the decision in that case cannot be deemed controlling in this; the difference in the proof taking this case out of the rule of comity which should apply in this class of cases where the proofs are the same. The proof shows that in the year 1809 William Congreve, a celebrated English inventor, obtained a patent, one feature of which was an "apparatus for extinguishing fire, which shall be called into action by the fire itself, at its first breaking out, and which shall be brought to bear upon the part where the flames exist." Briefly described, the apparatus which was covered by his patent consists of distributing pipes, located around the upper part of the room or building to be protected, connected with a water tank or water supply of some kind, with valves so adjusted and held in place by a combustible detent that, on the breaking out of a fire, the cord or detent would be severed, the valves opened, and the water turned upon the fire. He also suggests that, in the place of a combustible cord, the same thing may also be effected by having the end of the cord or wire in the room fixed, by means of certain cements, which shall give way or release it, without the immediate contact of the flames, but merely by the effect of the heat, the atmosphere of which would soon acquire a temperature sufficiently high for the purpose. He then incorporates in his specifications a table giving the degrees of heat at which different cements melt, so as to call the device into action. As, for illustration, a composition consisting of three parts resin and one part shellac melts at 102 Fahrenheit; a composition of nine parts shellac and eight resin melts at 107; a composition of two parts resin and one shellac melts at 113; a composition of eight parts bismuth, five lead, and three tin, melts at 190; and adds, "these substances may be further varied, and other similar ones applied on the same principle." The proof also shows that the device suggested by the Congreve patent came into use, to some extent, in England, and that

patents were taken out, from time to time, both in England and in this country, on improvements upon the Congreve device, and that the last 10 years have been especially prolific in patented improvements in this art in the United States. Among those who have taken out patents in this field within the last few years are Henry S. Parmlee, C. W. Talcott, and Charles Barnes, the patentee now before the court.

The distinctive features of the complainant's patent are: *First*, a distributer, or rose head, with a valve seat at the point where the rose head is connected with the supply pipe, the stem of this valve extending through the shell of the distributer or rose head, and a lever hinged at one side of the rose head, and so adjusted that it can be brought to bear upon the end of the valve stem, and hold the valve stem firmly in its seat, so as to restrain the water; this lever being held in place by fusible solder, so that an increase of heat in the room in the vicinity of the rose head sufficient to melt this solder will release the valve, and allow the water to flow through the distributer or rose head. *Second*. An elastic cushion, or spring, inserted in this valve stem, so that the pressure upon the valve will be, to a certain extent, relieved by this elastic cushion, and thereby prevent the liability of the pressure of the water upon the valve from breaking the solder which holds the water back.

I do not find in the proof any satisfactory evidence that the defendants infringe the third claim of this patent. I find nothing in the defendants' patent which corresponds to the wires, G, lever, H, and fusible jointed slide, I, which are elements of this claim. But, if I did, I find these features anticipated in nearly every patent upon devices of this character from that of Congreve to the date of the Barnes patent. They are also shown in the drawings of the Barnes patent of February 18, 1879. I am therefore quite clear that the complainant has no right to a decree for the alleged infringement of the third claim.

The fourth and fifth claims are for the combination of a perforated distributer, a valve located within the said distributer, and having a stem which projects through the shell of the distributer, and a lever to hold the valve to its seat within the distributer, and only differ slightly in the description of the fusible fastening. This device, so far as the valve within the distributer and stem extending through the distributer is concerned, is clearly anticipated by the Barnes patent of February 21, 1879. While the Talcott patent granted January 31, 1882, but for which application was filed in the patent office April 8, 1879,—and the public notice of the device must be carried back to the date of filing the application,—clearly shows and describes a distributer provided with a valve, the stem of which projects through the shell of the distributer, and which is held in place for the purpose of closing the valve by a cup-shaped lever, hinged upon one side of the distributer, and which passes round so as to press upon the valve stem, and which is fastened upon the other side of the distributer by a solder pin, so located as to be melted by a sufficient increase of heat in the room, and thereby release the lever, open the valve, and set the water flowing through the distributer. It is true it is urged and insisted on the part of the complain-

ant that this Talcott device does not show as effective a lever as that shown by the complainant's device, but it shows the idea, and whatever difference there is between the complainant's lever and the Talcott lever is simply due to a mere mechanical change of construction. It is true that the Talcott lever is in the shape of a cup, and is intended to cover the shell of the distributer, but that does not change the principle upon which it acts, and by which it holds the valve in its seat. As has been already said, the fusible solder joint or fastening which holds the distributer closed in these two claims seems to me to have no patentable novelty in view of the many forms of such joints shown in the proof. Talcott's fusible pin, and the solder joint holding the cap in place in Barnes' patent of February 18, 1879, are both sufficient illustrations of such joints. I am therefore very clear that the Talcott patent of January 31, 1882, which relates back to the time it was applied for in April, 1879, clearly anticipates the fourth and fifth claims of the complainant's patent.

As to the sixth claim, which covers, in combination with the valve and the lever, an elastic cushion in the stem of the valve, it is sufficient to say that the defendants use no such elastic cushion, and therefore do not infringe.

For these reasons the bill is dismissed for want of equity.