DODGE v. PORTER et. al.

(Circuit Court, D. Massachusetts. November 14, 1899.)

No. 764.

1. PATENTS—INVENTION—APPLICATION OF OLD DEVICES TO DIFFERENT ART.
   The application of old and well-known devices to a different art, in
   which they perform a new function, may constitute invention where the
   advantages to be gained by their use for such purpose were not obvious;
   and the fact that the art to which they were so applied was not new, and
   that they had never before been used therein, tends to support the claim
   of invention.

2. SAME—ANTICIPATION—PNEUMATIC TIRES.
   The Tillinghast patent, No. 497,971, for a pneumatic tire, which con-
   sists of a single-tube tire composed of an interior rubber air tube, an
   outer rubber cover, and an intervening fabric, all united by vulcanization,
   the purpose being to prevent chafing between the interior and exterior
   tubes, which resulted in such tires as previously made, was not antici-
   pated by anything in the prior pneumatic tire art, nor is the construction
   shown devoid of invention because sheets of rubber with a fabric be-
   tween, similarly united, were previously used in the making of rubber
   hose and rubber gaskets.

This was a suit in equity for infringement of a patent. On final
hearing.

Fish, Richardson & Storrow, William A. Redding, and Wilmarth
H. Thurston, for complainant.

E. S. Mansfield, for defendants.

COLT, Circuit Judge. This suit relates to patent No. 497,971,
granted May 23, 1893, to Pardon W. Tillinghast, for a pneumatic tire.
The patent describes a single-tube pneumatic tire composed of two
annular rubber tubes with intervening fabric all vulcanized together,
and forming a complete integral tire having all of its component parts
securely united. Previous to the Tillinghast tire the double-tube
pneumatic tire was in common use. It was to overcome what the
patentee regarded as defects in the double-tube structure that he
invented his single-tube tire. In defining the invention, Tillinghast
says in his patent:

"Heretofore pneumatic tires have been constructed with an interior air tube
of vulcanized rubber, provided with a covering of canvas, and a separately
vulcanized outer rubber covering having all its joints and parts cemented
together after vulcanization. Tires so constructed, however, are liable to be
rendered useless, owing to the chafing and wear of the parts in contact with
each other, and the cemented joints are liable to separation under the strain
caused by the constant flexing of the tire at the tread. It is the object of my
invention to provide a tire which will be free from internal chafing, and that
will have no joints or parts cemented or otherwise connected after vulcan-
ization, to become separated by use, and that can also be more readily attached
to the rim of the wheel, and be easily repaired. My invention consists in the
combination of an annular inner rubber air tube, an outer rubber covering, and
an intervening layer of braided or woven fabric, the several parts being joined
to form a complete annular tire while the rubber is in an unvulcanized condi-
tion, and then all vulcanized together, so that the textile layer will become
attached by the process of vulcanization to both the inner rubber tube and the
outer rubber covering; and when a loosely-woven or braided fabric is employed
the air tube and the outer rubber covering will also be united to each other

through the interstices of the fabric, the textile covering of the air tube serving to prevent the bursting of the said tube when subjected to pressure, and at the same time allowing the side walls of the tire to yield freely when passing over an uneven surface."

The claims in controversy are as follows:

"(1) A pneumatic tire, consisting of a rubber air tube and outer covering, substantially as specified, with the ends of the air tube and other component parts securely united by vulcanization, substantially as described, thereby constituting an integral complete tire. (2) A pneumatic tire, composed of a rubber tube, an intermediate layer of fabric, and an outer covering of rubber, substantially as described, having all its rubber joints and component parts simultaneously vulcanized together, forming an integral annular tire."

The evidence shows that Tillinghast invented his single-tube pneumatic tire, and disclosed it to others, as early as the summer of 1890, and that, consequently, his invention antedates the Boothroyd article in the Cyclist, describing a single-tube pneumatic tire, which was published in England in December, 1890. In the summer of 1890, Tillinghast was engaged in perfecting several other improvements in bicycle tires, which he thought at the time would yield him a more immediate pecuniary return than his single-tube pneumatic tire. These improvements related to a puncture-proof tread and an automatic pump; and between April, 1891, and July, 1892, he was granted five patents covering these inventions. He first applied for a patent for his single-tube pneumatic tire November 20, 1891. This application was several times rejected, and several times amended. On September 2, 1892, he withdrew his first application, and filed a new application, with a request that it be substituted for the old one. This request was granted, and the patent was finally issued on May 23, 1893. Under these circumstances there is no ground for holding that the patentee is chargeable with any such laches in taking out his patent as to render it void. Hubel v. Dick (C. C.) 28 Fed. 132, 140; National Cash-Register Co. v. Lamson Consol. Store-Service Co. (C. C.) 60 Fed. 603.

The principal defense in this case is that the Tillinghast patent, in view of the prior art, is void for want of invention. In considering the prior art as bearing on the validity of this patent, the evidence discloses several things which should be borne in mind. Although the rubber-tire art goes back to 1847, Tillinghast was the first to produce a practical and efficient single-tube pneumatic tire. His invention was not a mere improvement upon prior structures of the same type. The device has proved of great utility, and marks a distinct advance in the art. The Tillinghast tire to a large extent has supplanted in this country all other kinds of tires used on bicycles. The history of the rubber-tire art exhibits several distinct types, known, respectively, as the "solid tire," the "cushion tire," and the "pneumatic tire." The advantages derived from the solid and cushion tires are due to the resiliency of the rubber. The pneumatic tire does not depend upon the resiliency of the rubber, but upon the resiliency of the air with which it is inflated. The highly compressed air furnishes the highest degree of resiliency, and the elasticity of the rubber is only incidentally made available. Previous to the Tillinghast invention, the only practical pneumatic tire known was the Dunlop tire. This

tire consisted of two tubes. It was constructed of a vulcanized inner rubber air tube and a separately vulcanized outer cover, the air tube and the cover being separate from each other. The Dunlop tire was defective, owing to the chafing and wear of the parts in contact with each other, due to having the inner rubber air tube separate from the outer rubber cover. It was to overcome the objections to this form of tire that Tillinghast invented his single-tube tire, composed of an inner rubber air tube, an outer rubber covering, and an intervening fabric, inseparably united by vulcanization. There is nothing in the rubber-tire art which can be seriously considered as an anticipation of the Tillinghast structure. The solid rubber tire and the cushion rubber tire were not adapted to be inflated, and are manifestly different in construction and function. The only prior structures which bear directly on the question of anticipation relate to pneumatic tires. This branch of the art, as revealed in the present record, comprises four patents for pneumatic tires, and the Dunlop tire already commented upon. The earliest pneumatic tire is described in the Thomson patent of May 8, 1847. In this tire the air tube, composed of "sulphurized caoutchouc or gutta percha," is inclosed in an outer casing made of segments of leather riveted together. This casing also serves to attach the tire to the wheel rim. It is apparent that this structure is not an anticipation of the Tillinghast tire. Reference is also made to the three Thomas patents, dated March 12, 1889. In these patents the principal feature of novelty consisted in having the tread portion thicker or tougher than the other parts of the tire. These patents do not describe a single-tube pneumatic tire having the structural characteristics of the Tillinghast tire. They do not disclose a single-tube tire composed of an inner rubber air tube, an outer rubber cover, and an intervening fabric all vulcanized together. The only other tire in the prior art at the date of the Tillinghast invention was the Dunlop tire. This tire, as we have already said, was a double-tube tire, and it manifestly is not an anticipation of the Tillinghast device. In the construction of a pneumatic tire, Thomson, in his patent of 1847, considered an outer cover necessary for the protection of the inner rubber air tube, but did not conceive the idea of making the inner rubber air tube an integral part of the outer cover. In the Thomas 1889 patents it was thought that a pneumatic tire could be made out of a single annular rubber tube without any intervening fabric. The Dunlop conception embodied a vulcanized inner rubber air tube and a vulcanized outer rubber cover, which were separate from each other. This was the condition of the art at the time Tillinghast made his invention. He was the first to conceive the idea of making the inner rubber air tube and the intervening fabric an integral part of the outer rubber cover, and so prevent the inner rubber air tube from creeping or chafing against the interior surface of the outer rubber cover. It is clear that the Tillinghast patent is not void for want of invention by reason of anything which is found in the prior rubber-tire art.

Nor, in my opinion, is the Tillinghast patent void for lack of invention by reason of anything which is found in the prior rubber-hose art, or in the prior rubber-gasket art. It appears from several American

and British patents that it was the common practice, previous to 1890, to manufacture rubber hose composed of an inner rubber tube and an outer rubber covering, with intervening fabric, all vulcanized together. As this is not disputed, it is unnecessary to refer specifically to any of these patents. But, notwithstanding this fact, it still remains true that a pneumatic tire is quite a different thing from a rubber hose, and that each belongs to a distinct art. A rubber hose is a tubing of indefinite length, open at both ends. It is not an annular pneumatic tube forming a tire. There is nothing in the structure of rubber-hose tubing, nor in the various modes of producing such tubing, nor in the uses to which such tubing is put, which affords any suggestion leading to the production of a pneumatic tire. Nor does a rubber hose suggest that a tire having the structural characteristics of the Tillinghast patent would possess any special utility or advantages over other pneumatic tires. Rubber gaskets were constructed substantially the same as the Tillinghast tire. They were used for making tight joints in a vessel for treating sugar cane and bagasse. They are shown in the Duval patent of 1887. The Duval structure comprises a large vertical chamber to hold the crushed cane. The chamber is closed at its lower end by a removable bottom, which may be opened to permit the refuse solid matter to be discharged after treatment. The bottom must close against the lower end of the chamber with a tight joint, and to secure this result the joint is provided with a rubber gasket or packing ring. The specification of the patent says:

"The said jacket has formed in its lower edge a circular groove, in which is received a tube, G, of India rubber, filled with water under pressure, the said tube forming a packing to make a tight joint between the said jacket and a movable trap, which serves to close the bottom of said jacket, and that of the vessel A."

What has been said with respect to rubber hose may be repeated as to the rubber gasket, namely, that there is nothing in its structure, or in the mode of its production, or in the use to which it is put, that affords any suggestion that a pneumatic tire having such structural characteristics would be of any special utility, or would solve the problem of a practical and efficient pneumatic tire. In determining the question of anticipation of the Tillinghast patent based upon what was old in the rubber-hose art and in the rubber-gasket art it is well to bear in mind the language of Mr. Justice Brown, speaking for the supreme court, in Topliff v. Topliff, 145 U. S. 156, 161, 12 Sup. Ct. 825, 828, 36 L. Ed. 658:

"It is not sufficient to constitute an anticipation that the device relied upon might, by modification, be made to accomplish the function performed by the patent in question, if it were not designed by its maker, nor adapted, nor actually used, for the performance of such functions."

The inventive thought of Tillinghast was in the pneumatic tire itself, and not in the method of uniting two annular rubber tubes and an intervening fabric, which method may previously have been adopted for various purposes. The mere fact that it was old to vulcanize together an inner rubber tube, an intervening fabric, and an outer rubber cover in the rubber-hose art and in the rubber-gasket art, does

not prove that there was no invention in the application of such a method of construction, which such modifications as must be made, to a pneumatic tire. Although hose pipe and gaskets had been manufactured for years prior to the Tillinghast invention, it did not occur to any skilled mechanic that their method of construction could be successfully applied to the production of a pneumatic tire.

From the best consideration I am able to give the question, I am of the opinion that there is nothing found in the prior art which anticipates the Tillinghast patent, and that, admitting the method of inseparably uniting by vulcanization an inner rubber tube, an intermediate fabric, and an outer rubber cover was old in rubber hose and rubber gaskets, the conception that such a form of construction would produce a practical and efficient pneumatic tire constituted invention within the meaning of the patent laws of the United States. The pneumatic rubber-tire art dates back half a century. This record does not show that either the Thomson patent of 1847 or the later Thomas patents of 1889 describe practical tires. The Dunlop double-tube tire undoubtedly went into general use, but it was defective by reason of its duplex structure. Tillinghast, by uniting the different parts into an integral whole, overcame the defects in the Dunlop tire, and produced a really efficient and practical pneumatic tire. The Tillinghast invention may seem simple now that it has been disclosed. This is often true of very important inventions. Upon this point it is well to remember the language of the supreme court in the case of Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177. In that case, Mr. Justice Bradley, speaking for the court, said:

"It is further argued, however, that, supposing the devices to be sufficiently described, they do not show any invention, and that the combination set forth in the fifth claim is a mere aggregation of old devices already well known, and therefore it is not patentable. This argument would be sound if the combination claimed by Webster was an obvious one for attaining the advantages proposed,—one which would occur to any mechanic skilled in the art. But it is plain from the evidence, and from the very fact that it was not sooner adopted and used, that it did not, for years, occur in this light to even the most skillful persons. It may have been under their very eyes; they may almost be said to have stumbled over it; but they certainly failed to see it, to estimate its value, and to bring it into notice. * * * At this point we are constrained to say that we cannot yield our assent to the argument that the combination of the different parts or elements for attaining the object in view was so obvious as to merit no title to invention. Now that it has succeeded, it may seem very plain to any one that he could have done it as well. This is often the case with inventions of the greatest merit."

Let a decree be entered for an injunction and account in accordance with the prayer of the bill.