AUTOMATIC WEIGHING MACH. CO. v. PNEUMATIC SCALE CORPORATION, Limited.

(Circuit Court of Appeals, First Circuit. January 5, 1909.)

No. 768.

1. PATENTS (§ 90*) — PERSONS ENTITLED TO PATENTS—PRIORITY BETWEEN PATENTEES—DATE OF INVENTION.

When two patents for the same invention have been issued to independent inventors, the dates of their respective inventions are determined by (1) the dates of the patents; (2) the dates of the application, provided the application sufficiently describes the invention; (3) the dates of actual reduction to practice; (4) the dates of conception, with this qualification: that if either patentee seeks to carry the date of his invention back to the date of his conception, he must show reasonable diligence in adapting and perfecting his invention, either by actual reduction to practice or by filing his application.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 113; Dec. Dig. § 90.*]

2. PATENTS (§ 90*)—PRIORITY BETWEEN PATENTEES—DATE OF INVENTION.

The date of a patented invention is at least as early as the date of the application, provided it sufficiently describes the invention to enable those skilled in the art to understand it, such application being conclusive evidence that the invention is perfected and adapted to use, and the equivalent of an actual reduction to practice under the statute.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 116; Dec. Dig. § 90.*]

3. PATENTS (§ 90*) — PRIORITY BETWEEN PATENTEES — NATURE OF PATENTABLE INVENTION.

A conception of an invention, evidenced by disclosure, drawings, and even a model, is not a complete invention under the patent laws, and confers no rights on an inventor, and has no effect on a subsequently granted patent to another, unless he follows it with reasonable diligence by some

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

other act, such as an actual reduction to practice or filing an application for a patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 115–117; Dec. Dig. § 90.*]

4. PATENTS (§ 113*)—PRIORITY BETWEEN INVENTORS—EVIDENCE OF DILIGENCE—DECISION OF PATENT OFFICE.

Upon the question of fact whether one who conceived an invention and made drawings and a disclosure to others of the same was reasonably diligent in adapting and perfecting the same, the decision of the Patent Office tribunals and the Supreme Court of the District of Columbia in interference proceedings to which he was a party is entitled to great weight, if not absolutely controlling, in subsequent litigation between the same parties.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 161; Dec. Dig. § 113.*]

5. PATENTS (§ 90*)—PRIORITY BETWEEN INVENTORS—DATE OF INVENTION.

W. conceived an invention of an improvement in a machine, and made a drawing thereof which he exhibited to another in January, 1896. In January, 1897, he completed working drawings from which a machine was finished in the following April. In 1898 he filed an application on which a patent was granted in 1899. In the meantime, in December, 1896, T., an independent inventor, filed an application for a patent for the same machine, on which a patent was granted in 1904. *Held*, that W. did not use such reasonable diligence in perfecting and adapting his invention as to entitle him to carry the date of invention back to the time of its conception and disclosure, nor back of the date when he reduced it to practice by completing his machine; that the date of T.'s invention was the time of his application, and he was therefore the first and original inventor in the sense of the patent law, and his patent was valid.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 115; Dec. Dig. § 90.*]

6. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—AUTOMATIC WEIGHING MACHINE.

The Thomas patent No. 766,004, for improvements in automatic weighing machines, *held* not anticipated, valid, and infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

Appeal from the Circuit Court of the United States for the District of Maine.

For opinion below, see 158 Fed. 415.

Benjamin Phillips and Elmer P. Howe (Alfred H. Hildreth, on the brief), for appellant.

William K. Richardson (J. Lewis Stackpole, on the brief), for appellee.

Before COLT and LOWELL, Circuit Judges, and ALDRICH, District Judge.

COLT, Circuit Judge. This is a bill in equity brought under section 4920 of the Revised Statutes (U. S. Comp. St. 1901, p. 3394) for infringement of the first seven claims of the Thomas patent, No. 766,004, for improvements in automatic weighing machines. The invention consists, broadly speaking, in the addition of a second hopper with a time valve to the previous single-hopper weighing machine of the Doble and Watson patent, No. 556,258.

The only defense is priority of invention by Thomas W. Watson, to whom a patent was issued for the same invention. It is admitted that both Thomas and Watson were independent inventors of this improvement.

Section 4920 provides as follows:

"In any action for infringement the defendant may plead the general issue, and having given notice in writing to the plaintiff or his attorney, thirty days before, may prove on trial any one or more of the following special matters:

"Second. That he had surreptitiously or unjustly obtained the patent for that which was in fact invented by another, who was using reasonable diligence in adapting and perfecting the same; or * * *

"Fourth. That he was not the original and first inventor or discoverer of any material and substantial part of the thing patented * * *

"And the like defences may be pleaded in any suit in equity for relief against an alleged infringement."

Under these provisions, the defendant contends, first, that Watson was the original and first inventor of the thing patented, and, second, that Thomas unjustly obtained his patent for that which was in fact invented by Watson, who was using reasonable diligence in adapting and perfecting the same. The first defense turns upon the respective dates of the Thomas and Watson inventions, and the second defense raises a question of fact as to Watson's diligence in adapting and perfecting his invention.

Thomas filed his application December 17, 1896, and his patent issued July 26, 1904.

Watson conceived his invention, illustrated it by a drawing, and disclosed it to others, as early as January 10, 1896. He reduced his invention to practice by the building of a machine in April, 1897. He filed his application March 11, 1898, and his patent issued September 26, 1899.

It may be noted, first, that Thomas' application antedates Watson's reduction to practice by 4 months, and Watson's application by 15 months; and, second, that Watson's conception antedates Thomas's application by 11 months.

The main controversy with respect to the Thomas invention is whether the date of his invention is the date of his application, December 17, 1896, and the main controversy with respect to the Watson invention is whether the date of his invention is the date of his conception, January 10, 1896.

On April 24, 1901, the Patent Office declared an interference between the Thomas application and the Watson patent, under section 4904 of the Revised statutes (U. S. Comp. St. 1901, p. 3389):

"Whenever an application is made for a patent which, in the opinion of the Commissioner, would interfere with any pending application, or with any unexpired patent, he shall give notice thereof to the applicants, or applicant and patentee, as the case may be, and shall direct the primary examiner to proceed to determine the question of priority of invention. And the Commissioner may issue a patent to the party who is adjudged the prior inventor, unless the adverse party appeals from the decision of the primary examiner, or of the board of examiners-in-chief, as the case may be, within such time, not less than twenty days, as the Commissioner shall prescribe."

Under a rule of the Patent Office, the filing of an allowable application is a constructive reduction to practice. In accordance with this

rule, the date of the Thomas invention was fixed as of December 17, 1896, the date of his application; and the burden of proof was thrown upon Watson to establish the fact of reasonable diligence from the date of his prior conception, January 10, 1896, to the time Thomas filed his application. Upon this issue of diligence on the part of Watson, the Examiner of Interferences and the Commissioner of Patents, two of the three Patent Office tribunals which passed upon the question, and the Court of Appeals of the District of Columbia, found against Watson, and adjudged Thomas to be the prior inventor; and accordingly a patent was issued to Thomas under section 4904. As a result of the interference proceedings, there are two outstanding patents for the same invention issued to independent inventors.

The decision in interference proceedings is not conclusive on the question of priority of invention. The same question may arise in subsequent suits instituted under sections 4915, 4918, and 4920 of the Revised Statutes (U. S. Comp. St. 1901, pp. 3392, 3394).

Section 4915 provides that the unsuccessful applicant may bring a bill in equity, for the purpose of determining his right to receive a patent for his invention. The remedy under this section is in effect an appeal from the decision of the Patent Office tribunals.

Section 4918 provides that where there are interfering patents any person interested in any one of them may bring a bill in equity against the interfering patentee, and the court may declare either of the patents void in whole or in part.

Section 4920 provides that the defendant in a suit for infringement may prove any of the special matters of defense therein enumerated.

In the present suit, as we have seen, the question of priority of invention is raised under paragraphs 2 and 4 of section 4920. In order to determine the question of priority under these paragraphs, we must, as already pointed out, ascertain the respective dates of the Thomas and Watson inventions. If we find the date of the Thomas invention is prior to the date of the Watson invention, then Thomas is the original and first inventor, unless Watson was using reasonable diligence in adapting and perfecting his invention from the time of his conception. On the other hand, if we find that the date of the Watson invention is prior to the date of the Thomas invention, then Watson is the original and first inventor. No question of diligence arises regarding the Thomas invention, because the complainant does not undertake to carry the date of the Thomas invention back of his application, while in the case of Watson it is sought to carry the date of his invention back to his conception.

In patented inventions there are several distinct stages of the invention. Some patented inventions comprise only three stages, namely, conception (evidenced by drawings, disclosures, or models), application, patent; while other patented inventions comprise four stages, namely, conception, reduction to practice, application, patent.

The date of the first class of patented inventions must be either (1) the date of the patent, or (2) the date of the application, or (3) the date of the conception; while the date of the second class must be ei-

ther (1) the date of the patent, or (2) the date of the application, or (3) the date of the reduction to practice, or (4) the date of the conception.

When two patents for the same invention have been issued to independent inventors, we understand the rule to be that the dates of their respective inventions are, first, the dates of the patents; second, the dates of the applications, provided the application sufficiently describes the invention; third, the dates of actual reduction to practice; fourth, the dates of conception; with this qualification, that, if either patentee seeks to carry the date of his invention back to the date of his conception, he must show reasonable diligence in adapting and perfecting his invention, either by actual reduction to practice or by filing his application.

Applying this rule to the present case, we find that the date of the Thomas patent is July 26, 1904, and the date of his application is December 17, 1896. We also find that the date of the Watson patent is September 26, 1899, the date of his application is March 11, 1898, the date of his actual reduction to practice is April, 1897, and the date of his conception is January 10, 1896.

Upon a comparison of these dates, it appears that Thomas' application of December 17, 1896, carries the date of his invention back of Watson's application, March 11, 1898, and back of Watson's actual reduction to practice, April, 1897, but not back of Watson's conception, January 10, 1896. It follows, therefore, that Watson, in order to establish an earlier date than Thomas, must show that between the date of his conception, January 10, 1896, and the date of his actual reduction to practice, April, 1897, he was "using reasonable diligence in adapting and perfecting" his invention.

The defendant contends that the courts have adopted another and a different rule for determining the dates of inventions under the patent laws, and that the rule is as follows: Inventions are divided into two classes, simple and complicated. Simple inventions may be completed by drawings or disclosure which sufficiently describe the invention, while complicated inventions require for their completion actual reduction to practice. Under this rule the date of an invention depends upon the character of the invention. If the invention is a simple one, the date may be (1) the date of the patent, (2) the date of the application, (3) the date of actual reduction to practice, (4) the date of the conception. On the other hand, if the invention is a complicated one, the date may be either (1) the date of the patent, or (2) the date of actual reduction to practice.

Applying this rule to the present case, the defendant's position is as follows: If the court finds the invention in question is a simple one, then the date of the Thomas invention is the date of his application, December 17, 1896, and the date of the Watson invention is the date of his conception, January 10, 1896. On the other hand, if the court finds the invention is a complicated one, then the date of the Thomas invention is the date of his patent, July 24, 1904, and the date of the Watson invention is the date of his actual reduction to practice in April, 1897.

Upon this theory of the patent law it is apparent that Watson is the original and first inventor, for, if the invention is of a simple character, then Watson's invention was completed by his drawing and disclosure on January 10, 1896, while if the invention is of a complicated character, then Watson's invention was completed by actual reduction to practice in April, 1897.

With respect to this theory of the defendant, it is sufficient to say that it is novel and plainly unsound. No such distinction between inventions is found in the statutes, or has ever been recognized by the courts in any adjudicated cases. It may be further observed that any such artificial distinction would lead to hopeless confusion and great injustice.

In the present case the question of priority of invention involves two fundamental inquiries: First, is the date of a patented invention as early as the date of the application? In other words, can Thomas carry back the date of his invention to the date of his application? Second, is the date of a patented invention as early as the date of the conception? In other words, can Watson carry back the date of his invention to the date of his drawing and disclosure.

First. With respect to the first proposition it may be said that the law is well settled that the date of a patented invention is at least as early as the date of the application, provided it sufficiently describes the invention to enable those skilled in the art to understand it; and we have found no decision in which this rule is questioned. "Patented inventions always date at least as early as the dates of the execution of the original applications therefor, provided the original applications exhibit the inventions with the above-mentioned extent of sufficiency." Walker on Patents (4th Ed.) § 70.

In Kearney v. Railroad Company (C. C.) 32 Fed. 320, 322, Mr. Justice Bradley said:

"The relative priority of inventions is determined, first, by the dates of the respective patents therefor. But this is not conclusive. Evidence outside of the patents may be given to prove priority. The date of the application, if it describes the invention sufficiently, is conclusive evidence that the invention was made prior to such date."

The same rule was enforced by Mr. Justice Bradley in National Machine Company v. Brown (C. C.) 36 Fed. 317, 321. In the recent case of Prindle v. Brown, 155 Fed. 531, 534, 84 C. C. A. 45, 48, this court said:

"An application of the character which we have described is of itself a positive and absolute exhibition of everything which the statute requires to constitute an invention."

In Bates v. Coe, 98 U. S. 31, 34, 25 L. Ed. 68, Mr. Justice Clifford, speaking for the court, said:

"The presumption in respect to the invention described in the patent in suit, if it is accompanied by application for the same, is that it was made at the time the application was filed; and the complainant or plaintiff may, if he can, introduce proof to show that it was made at a much earlier date."

In Barnes Automatic Sprinkler Co. v. Walworth Manufacturing Co. (C. C.) 51 Fed. 88, 91, Judge Blodgett said:

"I am therefore very clear that the Talcott patent of January 31, 1882, which relates back to the time it was applied for in April, 1879, clearly anticipates the fourth and fifth claims of the complainant's patent."

This case was affirmed on appeal, 60 Fed. 605, 9 C. C. A. 154.

In the Barbed-Wire Patent Case, 143 U. S. 275, 12 Sup. Ct. 443, 36 L. Ed. 154, the court, in considering the evidence on the question of priority of invention, assumed that the date of the application of the patent in suit was the date of the invention; and the same assumption was made in Miller v. Eagle Manufacturing Company, 151 U. S. 186, 14 Sup. Ct. 310, 38 L. Ed. 121. See, also, Westinghouse v. Chartiers Val. Gas Co. (C. C.) 43 Fed. 582.

The rule of the Patent Office that the filing of an allowable application is constructive reduction to practice is only the expression in another form of the rule that the application of a patented invention, if it sufficiently describes the invention, is conclusive evidence that the invention was made at least as early as that date.

In Lorraine v. Thurmond, 51 O. G. 1781, 1782, Commissioner Mitchell, in his opinion, said, respecting this rule:

"Completed and allowed applications evidence completion of invention, and in suits brought upon patents granted thereon that stage of invention which is usually evidenced by reduction to practice is conclusively assumed to have been reached. Hence the doctrine of 'constructive reduction to practice.'"

The Commissioner further said:

"If, as held in Seymour v. Osborne, 11 Wall. 516, 20 L. Ed. 33, an invention is not patentable under the patent laws until it be perfected and adapted to use, and if, as held in the Telephone Cases, supra, and other cases cited, reduction to practice is not essential in order to obtain a patent, it follows that actual reduction to practice is not the only competent evidence of perfection and adaptation to use, but that the inventor's act in filing an allowable application is to be regarded in law as such an efficient and crowning step as to give it the standing of an invention so perfected and adapted. Interferences are declared after the applications involved are pronounced to be allowable by the experts of the office. In determining whether the application is allowable, the question of operativeness is one of the primary considerations. (Rule 133.) It hardly need be added that approved applications stand upon an entirely different basis from those which have been rejected by the office or abandoned by the applicant. Webster v. Sanford, 44 O. G. 567; Beach v. Fowler, 48 O. G. 821."

The rule of the federal courts respecting an application which has resulted in a patent, and the rule of the Patent Office respecting an allowable application, simply mean that such applications are conclusive evidence of the completeness of the invention. In other words, they are conclusive evidence that the stage of the invention has been reached which is evidenced by reduction to practice.

This rule of the Patent Office, as pointed out by Commissioner Mitchell in Lorraine v. Thurmond, supra, is based upon two well-established principles of the patent law:

(1) We have, in the first place, the principle that a statutory invention (except as modified by the doctrine of "diligence in adapting and perfecting") is a completed invention; that is, an invention which is perfected and adapted to use, or, as otherwise expressed, reduced to practice; and an inventor is not entitled to a patent—in other words,

has not made an invention in the legal sense—until he has reduced his invention to practice.

In Agawam Company v. Jordan, 7 Wall. 583, 602, 19 L. Ed. 177, the Supreme Court said:

"The settled rule of law is that whoever first perfects a machine is entitled to the patent and is the real inventor, although others may have previously had the idea and made some experiments towards putting it in practice. He is the inventor and is entitled to the patent who first brought the machine to perfection and made it capable of useful operation."

In Seymour v. Osborne, 11 Wall. 516, 552, 20 L. Ed. 33, the Supreme Court said:

"He is the first inventor in the sense of the patent law, and entitled to a patent for his invention, who first perfected and adapted the same to use, and it is well settled that until the invention is so perfected and adapted to use it is not patentable under the patent laws."

In Clark Thread Company v. Willimantic Linen Company, 140 U. S. 481, 489, 11 Sup. Ct. 846, 849, 35 L. Ed. 521, the court, in an opinion by Mr. Justice Bradley, said, when speaking of the invention covered by the patent in suit:

"It is evident that the invention was not completed until the construction of the machine. A conception of the mind is not an invention until represented in some physical form, and unsuccessful experiments or projects, abandoned by the inventor, are equally destitute of that character. These propositions have been so often reiterated as to be elementary."

In Woodcock v. Parker, 30 Fed. Cas. 491, 492 (1813), Mr. Justice Story said:

"The first inventor is entitled to the benefit of his invention if he reduces it to practice and obtains a patent therefor, and a subsequent inventor cannot, by obtaining a patent therefor, oust the first inventor of his right, or maintain an action against him for the use of his own invention."

In Bedford v. Hunt, 3 Fed. Cas. 37 (1817), Mr. Justice Story said:

"The first inventor who has put the invention in practice, and he only, is entitled to the patent. Every subsequent patentee, although an original inventor, may be defeated of his patent right upon proof of such prior invention being put into use."

In the leading case of Reed v. Cutter, 1 Story, 590, 599, Fed. Cas. No. 11,645, Mr. Justice Story said:

"For he is the first inventor in the sense of the act, and entitled to a patent for his invention, who has first adapted and perfected the same to use; and, until the invention is so perfected and adapted to use, it is not patentable."

In Washburn v. Gould, 3 Story, 122, 133, Fed. Cas. No. 17,214, Mr. Justice Story said:

"The law is that whoever first perfects a machine is entitled to the patent, and is the real inventor, although others may previously have had the idea, and made some experiments towards putting it in practice. * * * He is the inventor, and is entitled to the patent, who first brought the machine to perfection, and made it capable of useful operation."

In White v. Allen, 2 Fish. 440, 446, Fed. Cas. No. 17,535, Mr. Justice Clifford said:

"In order to constitute an invention, in the sense in which that word is employed in the patent act, the party alleged to have produced it must have proceeded so far as to have reduced his idea to practice, and embodied it in some distinct form. Gayler v. Wilder, 10 How. 498, 13 L. Ed. 504; Parkhurst v. Kinsman, 1 Blatch. 494 Fed. Cas. No. 10,757; Curtis on Pat. § 43. Mere discovery of an improvement does not constitute it the subject-matter of a patent, although the ideas which it involves may be new; but the new set of ideas, in order to become patentable, must be embodied into working machinery, and adapted to practical use. Sickles v. Borden, 3 Blatch. 535, Fed. Cas. No. 12,832."

In Winans v. New York & H. R. Co., Fed. Cas. No. 17,864, Mr. Justice Nelson said:

"It is not the person who has only produced the idea that is entitled to protection as an inventor, but the person who has embodied the idea into a practical machine and reduced it to practical use. He who has first done that is the inventor who is entitled to protection."

(2) At the same time we have the equally well settled rule that an invention need not be perfected and adapted to use, or reduced to practice, in order to obtain a valid patent, since no such condition is contained in the statutes.

This question of reduction to practice arose in the case of Wheeler v. Clipper Mower & Reaper Company, 6 Fish. 1, 16, Fed. Cas. No. 17,493. In the opinion in that case Judge Woodruff said:

"On the argument it was insisted that the patent is void if the patentee did not reduce the invention to practical use before the patent was obtained.

"This proposition is wholly unsound. No such condition is required by the act of Congress; and if it were true that a patent would be void on that ground, no patent could properly be granted unless proof was furnished that the invention claimed had gone into practical use, which is not, and cannot, under the statute, be made a condition of granting the patent. It is enough that the inventor has perfected his invention, and is able to furnish to the Patent Office such specifications and model as the law requires. Having done this, the patent, in so far as prerequisites to its validity, either by way of experiment or use, are material, is valid."

If any doubt ever existed, however, upon this point, it was conclusively settled by the Supreme Court in the Telephone Cases, 126 U. S. 1, 535, 8 Sup. Ct. 778, 782, 783, 31 L. Ed. 863. In that case, Mr. Chief Justice Waite, speaking for the court, said:

"But it is insisted that the claim cannot be sustained, because when the patent was issued Bell had not in fact completed his discovery. While it is conceded that he was acting on the right principle and had adopted the true theory, it is claimed that the discovery lacked that practical development which was necessary to make it practicable. In the language of counsel, there was still work to be done, and work calling for the exercise of the utmost ingenuity, and calling for the very highest degree of practical invention.

"It is quite true that when Bell applied for his patent he had never actually transmitted telegraphically-spoken words so that they could be distinctly heard and understood at the receiving end of his line, but in his specification he did describe accurately and with admirable clearness his process—that is to say, the exact electrical condition that must be created to accomplish his purpose; and he also described, with sufficient precision to enable one of ordinary skill in such matters to make it, a form of apparatus which, if used in the way pointed out, would produce the required effect, receive the words, and carry them to and deliver them at the appointed place. * * *

"The law does not require that a discoverer or inventor, in order to get a patent for a process, must have succeeded in bringing his art to the highest

degree of perfection. It is enough if he describes his method with sufficient clearness and precision to enable those skilled in the matter to understand what the process is, and if he points out some practicable way of putting it into operation."

From these established and seemingly contradictory principles of the patent law, first, that an invention in order to be patentable must be reduced to practice, and, second, that, under the statutes, reduction to practice is not essential either before or after the grant of a patent, it follows that there must be some stage of an invention when it must be presumed as a matter of law that the inventor has reduced his invention to practice; and that stage is presumed to have been reached when he has done all that he is required to do to obtain a valid patent, namely, when he has filed a complete and allowable application; and hence the Patent Office has adopted the rule that the filing of such an application is constructive reduction to practice, and the federal courts have adopted the rule that such an application is conclusive evidence that the patentee made his invention—that is, reduced his invention to practice—at least as early as that date.

The cases which hold that a rejected application is not sufficient to establish priority of invention under the statutes have no bearing on the question of the legal effect of a complete and allowable application which will result or has resulted in the granting of a patent. These cases simply enforce the rule that an invention must be perfected and adapted to use in order to prove prior invention or prior use. The Corn-Planter Patent, 23 Wall. 181, 23 L. Ed. 161; Lyman Ventilating & Refrigerator Company v. Lalor, 1 Ban. & Ard. 403, Fed. Cas. No. 8,632; Northwestern Fire Extinguisher Company v. Philadelphia Fire Extinguisher Company, 1 Ban. & Ard. 177, Fed. Cas. No. 10,337.

The further argument is advanced that an application is only evidence of a disclosure of a somewhat stronger character than a conception proved by drawings and disclosure. The answer to this argument is that the courts have uniformly held that an application which eventuates in a patent, and which sufficiently describes the invention, is conclusive evidence that the invention was made at the time the application was filed.

While the defendant insists that the filing of an allowable application is not the equivalent of reduction to practice, it admits that the issue of a patent is the "equivalent in effect in the art to reduction to practice by the completion of a machine." We cannot see the force or reasonableness of this position. The issuance of the patent is an act of government, with which the inventor has nothing to do except to pay the final fee, while in the filing of a complete and allowable application the inventor has performed all the acts required of him under the statute for the grant of a valid patent.

To limit a patentee who has never reduced his invention to practice, and who is not required to do so under the statutes, to fixing the earliest date of his invention as the date of his patent, is unsupported by authority, and would result in manifest injustice. For example, the Thomas patent was not issued until July 26, 1904, seven years and a half after he filed his application. If the earliest date that can be assigned for the Thomas invention is the date of his patent, any rival

inventor who may have reduced his invention to actual practice during this seven and a half years would become the prior inventor, although Thomas may have done all that the law requires to entitle him to a valid patent.

For these reasons we must hold that the date of the Thomas invention is December 17, 1896, the date of his application.

Second. We have now to consider the question whether Watson can carry the date of his invention back to the time of his conception, January 10, 1896. This question must be viewed from two standpoints: First, can it be said that Watson's conception, drawing, and disclosure to others, of themselves, or without regard to his subsequent acts, constitute a complete invention within the meaning of the patent laws? Second, can Watson as a patentee carry back the date of his invention to the time of his conception?

(1) The law appears to be well established that a conception evidenced by disclosure, drawings, and even a model, confers no rights upon an inventor unless followed by some other act, such as actual reduction to practice, or filing an application for a patent. A conception of this character is not a complete invention under the patent laws. It may constitute an invention in a popular sense, but it does not make the inventor the "original and first inventor" under the statutes. If it did constitute an invention under the statutes, then an inventor might stop with his drawings and disclosure, and hold the field for all time against a subsequent inventor who has reduced his invention to practice, or who has obtained a patent. The law will not permit this. An inventor must not stop with this stage of his invention, but he must proceed with reasonable diligence to perfect his invention, either by actual reduction to practice, or by filing his application for a patent.

This rule of the patent law is both reasonable and just. It secures to the first conceiver the right to his invention. It is not uncommon for two persons to conceive an improvement in an existing device about the same time, and all the law exacts of the first conceiver in order to protect him in his right to the invention is that he shall proceed with reasonable diligence to reduce the invention to practice, or to file an application for a patent in conformity with the statutes.

The authorities seem to be conclusive upon the point that a conception evidenced by disclosure and drawings does not constitute an invention under the patent laws.

Detroit Lubricator Manufacturing Co. v. Renchard (C. C.) 9 Fed. 293, 297, was a suit for infringement, in which one of the issues raised was priority of invention as between the patentee of the patent in suit and the defendant. In the opinion in that case Mr. Justice Matthews said:

"The defendants exhibit a drawing made by J. V. Renchard which bears date August. 10, 1876, and which, it is testified by him, was made on that day, and by others, that he showed it to them about that time. This antedates Parshall's application, but it fails to supersede his patent for the reason that it seems well established in evidence that Renchard did not at that time prosecute the matter beyond the mere drawing. The drawing seems to exhibit a perfect machine in all its parts, and sufficiently to show the combination forming the subject of the present controversy, particularly the metallic oil cup, the siphon tube carrying the condensed water into the glass indicator, and

the two chambers, condensing and oil, closely and directly united. Nevertheless, it is clearly proven that the defendants did not, in fact, construct an indicator in this form, and reduce it to actual use, until after it had been successfully accomplished by Parshall, nor until after the date of his patent. This mere drawing, therefore, cannot be allowed to have the effect of depriving Parshall of his title of being the first and original inventor."

Reeves v. Keystone Bridge Company, 5 Fish. 456, 462, 463, Fed. Cas. No. 11,660, was also a suit for infringement of a patent, and the issue was whether the complainant or the defendant was the first and original inventor. Although the date of the defendant's patent was subsequent to that of the patent in suit, they contended that the invention was actually made by them some time before. In support of this contention they relied upon certain drawings and sketches. In the opinion in that case, Judge McKennan said: "Can an invention be considered as 'perfected and adapted' which has reached only the maturity of an illustration on paper?" After considering various cases, the court states the rule of law in the following language:

"It must, therefore, be considered as an established rule that illustrative drawings of conceived ideas do not constitute an invention, and that, unless they are followed up by a seasonable observance of the requirements of the patent laws, they can have no effect upon a subsequently granted patent to another."

Pennsylvania Diamond Drill Company v. Simpson (C. C.) 29 Fed. 288, 290, was another suit for infringement, in which the principal issue was priority of invention. In that case, in order to avoid anticipation shown by the Ball and Case patents, the patentee of the patent in suit attempted to fix the date of his invention as the time of his conception and drawings. In the opinion by Judge Acheson the law is stated as follows:

"Here, Allison, it would seem, was the first to conceive the invention; but mere conception, which is not seasonably followed by some practical step, counts for nothing as against a subsequent independent inventor, who, having complied with the patent laws, has obtained the patent. It would indeed be a strange perversion of the purpose of the patent laws if one who had conceived of a new device, and proceeded so far as to embody it in rough sketches, or even in finished drawings, could there stop, and yet hold that field of invention against all comers for a period of 12 years. The law does not so reward supineness. Hence, in Reeves v. Keystone Bridge Co., 5 Fish. 456, 463, Fed. Cas. No. 11,660, Judge McKennan declared the established rule to be 'that illustrative drawings of conceived ideas do not constitute an invention, and that, unless they are followed up by a seasonable observance of the requirements of the patent laws, they can have no effect upon a subsequently granted patent to another.' And this principle was enforced by Mr. Justice Matthews in the more recent case of Detroit Lubricator Mfg. Co. v. Renchard (C. C.) 9 Fed. 293, although the antedating drawing there exhibited a perfect machine in all its parts."

In Winans v. New York & H. R. Co., Fed. Cas. No. 17,864, which was an action at law for infringement, in which the principal question was whether the plaintiff was the first inventor of the railroad car claimed in his patent, Mr. Justice Nelson, in charging the jury said:

"Now, the circumstance that a person has had an idea of an improvement in his head, or has sketched it upon paper, has drawn it and then gives it up—neglects it—does not, in judgment of law, constitute or have the effect to constitute him a first and original inventor. It is not the person who has

only produced the idea that is entitled to protection as an inventor, but the person who has embodied the idea into a practical machine and reduced it to practical use. He who has first done that is the inventor who is entitled to protection."

Electric Railroad Signal Co. v. Hall Railroad Signal Co. (C. C.) 6 Fed. 603, 605, was a suit for infringement in which the main defense was that the patentee was not the first inventor. The law is stated by Judge Shipman in that case as follows:

"The patent having been granted to Pope, and now being attacked on the ground that the patentee was not the first inventor, it is not enough for the defendant to show that Hall had conceived the same idea, and had made drawings or models, and experiments with his models, but the defendant must establish that Hall reduced what he conceived to practice in the form of an operative machine, and embodied it in some practical and useful form before Pope made his application, it being a fact in the case that Pope had not reduced his idea to practice before his application. Ellithorp v. Robertson, 2 Fish. 85, Fed. Cas. No. 4,408; Union Sugar Refinery v. Matthiesson, 3 Cliff. 639, Fed. Cas. No. 14,399. The law on the subject of priority of right between two independent inventors is substantially as it was laid down by Judge Story in Reed v. Cutter, 1 Story, 590, Fed. Cas. No. 11,645: 'In a race between two independent inventors, he who first reduces his invention to a fixed, positive, and practical form would seem to be entitled to a priority of right to a patent therefor. The clause of the fifteenth section of the act of 1836, now under consideration, seems to qualify that right by providing that in such cases he who invents first shall have the prior right, if he is using reasonable diligence in adapting and perfecting the same, although the second inventor has, in fact, first perfected the same and reduced the same to practice in a positive form.' White v. Allen, 2 Fish. 440, Fed. Cas. No. 17,535; Reeves v. Keystone Bridge Co., 5 Fish. 456, Fed. Cas. No. 11,660; Agawam Co. v. Jordan, 7 Wall. 583, 19 L. Ed. 177."

Draper v. Potomska Mills Corporation, Fed. Cas. No. 4,072, was a suit for infringement, and one of the defenses was that the patentee was not the original and first inventor. In that case Judge Shepley said:

"Illustrated drawings of conceived ideas do not constitute an invention, and, unless they are followed up by a seasonable observance of the requirements of the patent laws, they can have no effect upon a subsequently granted patent to another. But a patentee whose patent is assailed upon the ground of want of novelty may show by sketches and drawings the date of his inceptive invention, and, if he has exercised reasonable diligence in perfecting and adapting it, and in applying for his patent, its protection will be carried back to such date."

In Ellithorp v. Robertson, Fed. Cas. No. 4,408, which was a bill in equity brought to have a patent already issued declared void, and the complainant decreed to be the first and original inventor, and entitled to a patent, the court said:

"To constitute such a prior invention as will avoid a patent that has been granted, it must be made to appear that some one before the patentee not only conceived the idea of doing what the patentee has done, but also reduced his idea to practice and embodied it in some practical and useful form. The idea must have been carried into practical operation. The making of drawings of conceived ideas is not such an embodiment of such conceived ideas in a practical and useful form as will defeat a patent which has been granted."

(2) The next question we have to consider is whether Watson as a patentee can carry back the date of his invention to the date of

his conception; that is, to his drawing and disclosure of January 10, 1896. It is conceded that a patentee who has used "reasonable diligence in adapting and perfecting" his invention can carry the date back to his drawings and disclosure; and the only question which arises is whether the law will permit him to do this in the absence of such reasonable diligence. In other words, can a patentee stop with his drawings and disclosure for an unreasonable time, and then, by virtue of his subsequently obtaining a patent, hold this field of invention against a rival inventor whose conception of the same invention was later, and who proceeded with diligence to build a practical machine, or to file an application for a patent? In our opinion, he cannot do this under the patent laws.

We understand the true rule to be that a patentee who undertakes to carry back the date of his invention to his drawings and disclosure must show reasonable diligence in adapting and perfecting his invention, either by actual reduction to practice or by filing his application. This rule is supported by the great weight of authority, and we have found no cases which directly hold that this is not the law, although there are some cases in which a patentee has been permitted to carry back his invention to his drawings and disclosure, where the question of diligence was not raised or passed upon. Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177; Dodge v. Porter (C. C.) 98 Fed. 624, 625; Westinghouse Electric & Mfg. Co. v. Stanley Instrument Co., 133 Fed. 167, 68 C. C. A. 523.

No sound reason has been advanced why the doctrine of diligence should not apply to a patentee as well as to an inventor who has not secured a patent. On the other hand, any such distinction in favor of patentees is not in harmony with the patent laws. We have seen that an invention in the sense of the patent law signifies a completed invention, and that the earliest date of an invention is the time of its completion. We have also seen that an invention may be completed either by actual reduction to practice or by filing a complete and allowable application in conformity with the statutes.

This general principle, however, is subject to this qualification:

By section 15 of the act of July 4, 1836, c. 357, 5 Stat. 123, it is provided that a defendant in an action upon a patent may set up in defense that the plaintiff had "surreptitiously or unjustly obtained his patent for that which was in fact invented by another who was using reasonable diligence in adapting and perfecting the same."

Section 6 of the act of Feb. 21, 1793, c. 11, 1 Stat. 322, provided that the defendant in an action upon a patent may set up that the plaintiff "had surreptitiously obtained a patent for the discovery of another person," and section 15 of the act of 1836 amended this section by adding the words "or unjustly," and the words "for that which was in fact invented by another who was using reasonable diligence in adapting and perfecting the same."

This amendment introduced a new and just principle into the patent law, inasmuch as it protected the first conceiver of the invention by permitting him to carry back the date of his invention to the time of his drawings and disclosure, provided he was using reasonable diligence in adapting and perfecting his invention. This amendment was

fully considered by Mr. Justice Story in Reed v. Cutter, supra. In that case Mr. Justice Story said:

"The patent act of July 4, 1836, c. 357, §§ 7, 8, 13, 15, 16, 5 Stat. 322, expressly declares that the applicant for a patent must be the first, as well as an original, inventor. The passage cited from Mr. Phillips' work on Patents (page 395), in the sense in which I understand it, is perfectly accurate. He there expressly states that the party claiming the patent must be the original and first inventor; and that his right to a patent will not be defeated by proof, that another person had anticipated him in making the invention, unless such person 'was using reasonable diligence in adapting and perfecting the same.' These latter words are copied from the fifteenth section of the act of 1836 (chapter 357), and constitute a qualification of the preceding language of that section; so that an inventor who has first actually perfected his invention will not be deemed to have surreptitiously or unjustly obtained a patent for that which was in fact first invented by another, unless the latter was at that time using reasonable diligence in adapting and perfecting the same. And this I take to be clearly law; for he is the first inventor in the sense of the act, and entitled to a patent for his invention, who has first perfected and adapted the same to use; and until the invention is so perfected and adapted to use it is not patentable. An imperfect and incomplete invention, resting in mere theory or in intellectual notion, or in uncertain experiments, and not actually reduced to practice, and embodied in some distinct machinery, apparatus, manufacture, or composition of matter, is not, and indeed cannot be, patentable under our patent acts, since it is utterly impossible, under such circumstances, to comply with the fundamental requisites of those acts. In a race of diligence between two independent inventors, he who first reduces his invention to a fixed, positive, and practical form would seem to be entitled to a priority of right to a patent therefor. Woodcock v. Parker Fed. Cas. No. 17,971. The clause of the fifteenth section, now under consideration, seems to qualify that right, by providing that, in such cases, he who invents first shall have the prior right, if he is using reasonable diligence in adapting and perfecting the same, although the second inventor has, in fact, first perfected the same, and reduced the same to practice in a positive form. It thus gives full effect to the well-known maxim that he has the better right who is prior in point of time, namely, in making the discovery or invention."

This decision has been followed in many cases, and we are not aware that it has ever been questioned. According to Reed v. Cutter, Fed. Cas. No. 11,645, section 15 of the act of 1836 secures to the first inventor the prior right, provided he uses reasonable diligence in adapting and perfecting his invention, and this rule applies to all inventors, whether patentees or otherwise.

The defendant relies largely upon the language of the court in Loom Company v. Higgins, 105 U. S. 580, 594, 26 L. Ed. 1177. In that case the court said:

"Webster had invented it before that time, and had made a drawing of it, which in March, 1868, he exhibited and explained to Davis. An invention relating to machinery may be exhibited either in a drawing or in a model, so as to lay the foundation of the claim to priority if it be sufficiently plain to enable those skilled in the art to understand it. There is no doubt that Davis understood Webster's drawing, and he did not then claim that the invention belonged to himself."

It will be observed that the court does not consider or pass upon any question of diligence, and that the language is simply to the effect that a drawing or a model may "lay the foundation of the claim to priority." Further, an examination of the facts in Loom Company v. Higgins shows that Webster was clearly the prior inventor, since he filed his application for a patent before Davis (who never applied for

a patent) reduced the invention to practice. Again, to interpret broadly, the language used in Loom Company v. Higgins as meaning that a completed invention under the patent laws "may be exhibited in a drawing or in a model," is inconsistent with the rule laid down by the Supreme Court and the Circuit Court in the cases already cited. In this connection we need only refer to the later case of Clark Thread Company v. Willimantic Linen Company, supra, where Mr. Justice Bradley (who wrote the opinion in Loom Company v. Higgins) said, in the opinion of the court, that the invention covered by the patent sued upon "was not completed until the construction of the machine."

In Odell v. Stout (C. C.) 22 Fed. 159, 164, the patentee attempted to carry back the date of his invention by means of drawings. This case was heard by Mr. Justice Matthews and Judge Sage. Mr. Justice Matthews was a member of the court which decided Loom Company v. Higgins. In the opinion by Judge Sage it was said:

"It is settled that 'an invention relating to machinery may be exhibited either in a drawing or in a model, so as to lay the foundation of a claim to priority, if it be sufficiently plain to enable those skilled in the art to understand it.' Loom Co. v. Higgins, 105 U. S. 594, 26 L. Ed. 1177. But this rule is to be taken with proper qualifications. Drawings may carry date of invention back if reasonable diligence is shown. Kneeland v. Sheriff, 18 O. G. 242. Making drawings of an idea is not invention, and is of no effect unless followed up. Draper v. Potomska Mills, 13 O. G. 276, Fed. Cas. No. 4,072. Merely making drawings is not such an embodiment of invention as will defeat a subsequent patent. Ellithorp v. Robertson, 4 Blatchf. 307, Fed. Cas. No. 4,408. The reasons for this qualification of the rule are well stated in section 61, Walker on Patents."

We think this opinion states the true rule, and that the language of the court in Loom Company v. Higgins must be understood with the qualification respecting reasonable diligence in perfecting the invention.

In Reeves v. Keystone Bridge Company, supra, the court said:

"A patentee whose patent is assailed upon the ground of want of novelty may show by sketches and drawings the date of his inceptive invention, and if he has exercised reasonable diligence in 'perfecting and adapting' it, and in applying for his patent, its protection will be carried back to such date. * * * Reasonable diligence in 'perfecting and adapting' the invention is essential to the efficacy of such a claim."

In Christie v. Seybold, 55 Fed. 69, 76, 5 C. C. A. 33, 40, the court, after citing with approval Judge Story's language in Reed v. Cutter, said:

"It is obvious from the foregoing that the man who first reduces an invention to practice is prima facie the first and true inventor, but that the man who first conceives, and, in a mental sense, first invents a machine, art, or composition of matter, may date his patentable invention back to the time of its conception, if he connects the conception with its reduction to practice by reasonable diligence on his part, so that they are substantially one continuous act."

In Merrow v. Shoemaker (C. C.) 59 Fed. 120, 122, where the inventor undertook to carry back the date of his invention to his drawings and disclosure, Judge Dallas said in his opinion:

"If so, he has established his date of invention as not later than that day, and the question of anticipation must be solved with reference thereto, provid-

ed that he was duly diligent in filing his application for a patent and in constructing his machine."

See, also, Detroit Lubricator Manufacturing Company v. Renchard, supra; Pennsylvania Diamond Drill Company v. Simpson, supra; Electric Railroad Signal Company v. Hall Railroad Signal Company, supra; Draper v. Potomska Mills Corporation, supra.

We come now to the remaining question, whether Watson was reasonably diligent in adapting and perfecting his invention.

Upon this question of fact the decision of the Patent Office tribunals and the Court of Appeals of the District of Columbia is entitled to great weight, if it is not absolutely controlling.

In Morgan v. Daniels, 153 U. S. 120, 125, 14 Sup. Ct. 772, 773, 38 L. Ed. 657, a suit was brought under section 4915 of the Revised Statutes by the party who was refused a patent in interference proceedings, to determine the question whether he should not be adjudged entitled to a patent. In that case the court used the following language:

"Upon principle and authority, therefore, it must be laid down as a rule that, where the question decided in the Patent Office is one between contesting parties as to priority of invention, the decision there made must be accepted as controlling upon that question of fact in any subsequent suit between the same parties, unless the contrary is established by testimony which in character and amount carries thorough conviction."

There are four admitted facts with respect to Watson's diligence; (1) Watson conceived the invention, illustrated it by a drawing, and disclosed it to Doble as early as January 10, 1896; (2) he made working drawings some time between January 10, 1896, and the early part of January, 1897, when the exhibit blue print which was taken from the working drawings was handed to the pattern maker, Frazer; (3) he completed the building of a machine in April, 1897; (4) the main reason for the delay was business considerations arising from the fact that John F. Cushing had made a contract with the Electric Scale Company to build 10 single-hopper machines under the Doble and Watson patent.

Watson assigned his application to the Electric Scale Company, and, the patent issued to that company as assignee. W. H. Doble was the manager of the Electric Scale Company. The Cushing contract with the Electric Scale Company was made January 28, 1896. The additional evidence taken in this case relates to the time during 1896 when these working drawings were made. In our opinion this is immaterial; and it may be assumed, as stated by Watson, and now testified to by Doble, that these drawings were made in the fall of 1896.

The main point against Watson on the question of diligence is that for business reasons nothing was done with respect to his invention between January, 1896, and January, 1897, except to make working drawings, or, upon the evidence as it now stands, nothing was done until September, 1896, when Watson began on the working drawings. As to the reason for this delay, Mr. Doble testified in the interference proceedings as follows:

"As he [Cushing] guaranteed the speed and accuracy, and was the responsible party, I did not care whether he accomplished this one hopper or a dozen."

"Before January, 1897, they had done nothing except complete the drawings. This contract with John P. Cushing which practically gave, if carried out, all the results that could be accomplished under the double hopper, kept them from acting during the early part of the year, and the fact that they were held to Cushing by this contract kept them from acting later. I would say that I was practically the only one in the company who knew just what was going on and took an active part in the affairs of the company. In January we had the patterns made for the double hopper and the casting made from same on 1st of February."

"After receiving the drawings from Mr. Watson, in 1896, nothing was done in an active way, as I was trying to induce Mr. Cushing to put the double hopper onto the machines he had constructed, and which failed to do the work for which they were designed. Individually, I had no money to manufacture with myself, and the company had but a limited amount, and were practically bound to Mr. Cushing by his contract until such time as he threw up the same."

Mr. Watson also testified as follows:

"In the late summer of 1896, Mr. Cushing had proceeded with his contract until a part of the machines had been finished, and he was experimenting at that time with devices which he was called upon to furnish under his contract for the remaining machines. At the same time he had told me that it was his intention to discontinue his business at the close of the year 1896, and had so told me that I might be on the lookout for other employment. At that time I mentioned to Mr. Cushing the idea of the double hopper, and suggested to him that such an arrangement would assist him in fulfilling his contract in the completion of the remaining machines. As the result of my interview with Mr. Cushing, I thought that he was favorably impressed with the idea that the double hopper would be of use to him in completing the remaining machines; and with the idea that he thought such an arrangement would be useful to him I went to work making drawings of the additional hopper and its mechanism, so that it might be applied to the machines that he was building. A portion of this time so spent was while actively employed on Mr. Cushing's work, and a portion of it on outside time. I consulted with Mr. Cushing and showed him some of these drawings, but he finally concluded that it would not be necessary for him to use the idea in the completion of his contract."

Upon the state of facts presented in the interference proceedings and in this record, we agree with the conclusion of the Patent Office tribunals and the Court of Appeals of the District of Columbia that Watson failed to use such diligence as the law requires.

In its decision the Court of Appeals said:

"The determination of the question depends upon the action or inaction of Watson during the period intermediate between the date of his conception of the invention, January 10, 1896, and the filing date of Thomas' application, December 17, 1896. But during all this period we find no evidence whatever of action on the part of Watson to reduce his conception to practice, beyond the making of some working drawings and a blue print taken from them, if indeed these were made during that interval; for their date is left in extreme doubt by the testimony, and it is not at all certain that they were made before January of 1897. Even if they had been made before the filing of Thomas' application, they could scarcely be held to have been a manifestation of due diligence on the part of Watson. During the whole of the year 1896 he was busy with the single-hopper machine; and during the year he took out a patent for that machine. If he had the device of the double hopper perfected in his own mind, no reason is shown why it could not have been reduced to practice; nor is there any reason shown why he could not have applied for a patent." Watson v. Thomas, 23 App. D. C. 65, 68.

Since infringement is not denied as to the defendant's machine complained of, it follows that a decree should be entered for the complainant for an injunction and an account, as prayed for in its bill.

The decree of the Circuit Court is reversed, and the case is remanded to that court for proceedings in accordance with this opinion, and the appellant recovers its cost of appeal.