Mr. Justice Van Orsdel
delivered the opinion of the Court:
This is an appeal [by Coloman DeKando]. from the Commissioner of Patents, awarding priority of invention to appellee, Albert H. Armstrong, the senior party. The invention relates to the control of induction motors used in the movement •of railway cars, and is described in the opinion of the Examiners-in-Chief as follows:
“The interference relates to improvement in the control of induction motors when used in the propulsion of railway cars in which the wheels of the same car, or of different cars in the .same train, are apt to differ in diameter. When two like induction motors derive their current from the same source, they revolve at the same angular speed; but where the wheels are ■ of different diameters, and the motors are connected to the .axles, this relation is impossible. The difference in diameter necessitates different angular velocities. For the purpose of •overcoming this difficulty and properly distributing the load upon the motors, a permanent resistance is placed in the secondary circuit of the motor, which is driven by the wheels of larger diameter for the purpose of increasing the slip, while giving the same torque, and thus equally distributing the load.”
*316 The issue is as follows:
“1. In combination with a vehicle, a plurality of induction motors mechanically connected to the driving wheels of said vehicle, means under the control of the motorman for controlling said motors simultaneously, and means for adjusting the relative torque of said motors.
“2. In combinations with a vehicle, a plurality of induction motors mechanically connected to the driving wheels of said vehicle, means under the control of the motorman for controlling said motors simultaneously, and means for adjusting independently the relative resistances of the secondary circuits of said motors.
“3. In combination with a vehicle, a plurality of induction motors mechanically connected to the driving wheels of said vehicle, a controlling switch adapted to vary simultaneously the resistances in the secondary circuits of said motors to control the speed of the vehicle, and means for adjusting independently the relative resistances in the secondary circuits of said motors to vary the relative speed torque characteristics of said motors.
“4. In combination with a vehicle, a plurality of induction motors mechanically connected to the driving wheels of said vehicle, a switch under the control of the motorman for controlling said motors simultaneously, and independent adjustable resistances placed near the several motors and connected in their secondary circuits.”
On June 28, 1905, appellee filed an application in the Patent Office for a patent on the invention in issue, which was granted February 6, 1906. Appellant’s application was filed July 3, 1906. With the filing dates before us, we will review briefly what the respective parties did prior to entry into the Patent Office. It appears that appellant made his invention abroad, and put it into actual use prior to the spring of 1904 on what is known as the Valtellina Pailway in Italy. It appears that in March, 1904, one Waterman went to Europe and met the appellant at Budapest, where the details of appellant’s invention were explained to him. He also saw the invention in *317 use ou the Valtelliua road in Italy. In addition, appellant furnished Waterman with an elaborate written description of the invention. That document, together with notes he had made, Waterman brought with him to the United States, where he arrived on May 5, 1904. Within a few days after his arrival, he communicated his information in detail to one Stillwell, a distinguished electrician in New York. Waterman made a preliminary written report to Stillwell on June, 7, 1904. During the following year Waterman described the invention to a number of electrical engineers, among whom was one De Muralt, now professor of electrical engineering in the University of Michigan. It also appears that Waterman explained the invention to the American Institute of Electrical Engineers on June 19, 1905.
Appellee testified that the conception of this invention occurred to him in 1894 or 1895, when he was considering the problem involved in three-phase induction motors. Two parties are named by him with whom this problem was discussed. One witness, Berg, testifies that between 1893 or 1894 and 1897 he and appellee worked together on the designing of induction motors and alternating current generators. It also appears that about 1897 appellee prepared designs for a control system which was used in what was known as the Varese railway line in Italy; and that while the system used in that line was not the one of the invention, appellee discussed the present invention with two witnesses, Berg and Steinmetz, at that time. Steinmetz testifies that Armstrong disclosed the invention to him as early as 1894 or 1895. This disclosure he says embraced the idea of a permanent resistance to take care of the problem of unequally sized wheels. The dates of disclosure fixed by appellee’s witnesses vary from 1894 to 1901 or 1902. It was, however, found by the tribunals of the Patent Office that the matters disclosed by appellee did not embrace the present invention, and that the appellee is not entitled to a date of conception prior to 1902.
Appellee, in his statement, alleges conception and disclosure of the invention in 1895; that drawings were made May 8, *318 1905; that no model was made, and that he has never embodied the invention in a full-sized machine. Proof of what the appellee actually did has been greatly simplified by the following statement of his counsel in their brief: We, of course, do not make any claim that Armstrong was diligently proceed; ing to reduce his invention to practice from the time when he first conceived it, up to the time when he filed his application, We do claim that he has definitely proven a date of conception at least as early as 1902; that when he saw an opportunity to use his invention commercially, he wrote his attorney about it, and that his attorney diligently filed a patent application for Armstrong.” Conception of the invention was, we-think, correctly accorded appellee by the Patent Office as early as 1902. Prom the statement of counsel, his filing date must be fixed as the date of constructive reduction to practice. Appellee, therefore, had not reduced the invention to practice at the «time of, the disclosure of Waterman. This narrows the case to a single question of law: Was the knowledge possessed, by Waterman and disclosed by him to others skilled in the1 art and competent to understand it, with sufficient clearness to» enable them to have reduced the invention to practice, equivalent to a reduction to practice of the invention in this country ?' If it was not, it is clear that appellee must prevail.
Section 4886, Rev. Stat., U. S. Comp. Stat. 1901, p. 3382, provides that before an inventor is entitled to a patent, his invention must not have been “known or used by others in this, country before his invention or discovery thereof, and not patented or described in any printed publication in this or any foreign country before his invention or discovery thereof.” It appears from this that before an inventor is entitled to a patent for his invention four things must not exist,—the invention must not be known by others in this country; it must not be in use or have been used in this country; it must not have been patented in this or any foreign country; it must not have been described in any printed publication in this or any foreign country. It must be conceded that on appellee’s filing date, his date of reduction to practice, appellant’s foreign *319 invention was known in this country. But the date of appellee’s discovery relates hack to his date of conception, which, was prior to Waterman’s disclosure of appellant’s invention here.
It follows, then, that before the knowledge of appellant’s-invention here can constitute a bar to appellee’s right to his patent, it must operate as a reduction to practice in this country. Any knowledge or use of the invention by appellant abroad, in the absence of a patent or description in a printed publication prior to appellee’s date of invention or discovery,, cannot deprive appellee of his right to a patent. Rev. Stat.. sec. 4928, U. S. Comp. Stat. 1901, p. 3396. All that appellant did abroad was a nullity in so far as it affected the right of appellee. If, therefore, appellee’s right is to be destroyed,, it must be because of the knowledge imparted to Waterman, which, however complete, amounts to nothing more than proof of conception and disclosure, since all consideration of what' appellant did in Europe must be eliminated. The device embodied in appellant’s invention had not been constructed in. this country at the time appellee filed his application and constructively reduced his invention to practice.
The knowledge sufficient to defeat a patented invention, or the right to a patent for an invention which has been reduced to practice, must be more than mere knowledge of a conception or disclosure of a conception. It has long been held that the representation of the conception of an idea by means of drawings is not such an embodiment into practical and useful form as will negative novelty. It is likewise settled law that an invention cannot be completed by anything short of a reduction to practice. Curtis, Patents, § 87a; Automatic Weighing Mach. Co. v. Pneumatic Scale Corp. 92 C. C. A. 206, 166 Fed. 288, 299; Nelson v. Faucette, 33 App. D. C. 217. Robinson, in his work on Patents, vol. 1, ¶ 227, defines the knowledge sufficient to defeat the right to a patent, as follows: “It is to be remembered, however, that ‘knowledge’ in this sense, means such an acquaintance with the invention on the part of the public as renders it available to them as a practically opera *320 tive means. If their knowledge is derived from use in this ■country, the use must be of such a kind as imparts this information. If it rests on any foreign or domestic patent or publication, these must be sufficient to accomplish the same result. In neither of these cases must there be any necessity for the exercise of additional inventive skill, since, with the employment of the creative faculties, in the adaptation of any invention to the public use, another obligation is incurred which ■can only be discharged by protecting that inventor in the exclusive use of the invention. Thus we arrive at a more perfect .and exhaustive definition of this attribute of novelty, and see that an invention is to be regarded as new whenever it has not already been brought within the practical knowledge of the public as an operative means, either through prior use at home, or through a prior patent or a prior publication.”
Knowledge required by the statute is more than a mere mental concept. It must be the result of some act that amounts to invention. “Every invention contains two elements: (1) An idea conceived by the inventor; (2) An application of that idea to the production of a practical result. Neither of these ■elements is alone sufficient. An unapplied idea is not an invention. The application of an idea, not original with the person who applies it, is not an invention. Hence, the inventive act in reality consists of two acts,—one mental, the conception of an idea; the other manual, the reduction of the idea to practice.” 1 Robinson, Patents, ¶ 71. No manual act which would amount to a reduction of appellant’s idea to practice ■occurred in this country. Nothing had been done by Waterman and his associates up to the time appellee filed his application which amounted to a reduction to practice. The disclosure of Waterman was that of a foreign invention, of which we can take no cognizance. Hence, for our purpose, the disclosure was nothing more than that of a mental concept. The fact that Waterman gained that concept from what he saw .and heard cannot avail appellant to any greater extent than if it had originated with him at the date of Waterman’s disclosure. It is a general rule that an invention is reduced to actual prac *321 tice prior to the filing date only when a mechanical embodiment of it is made in such form as to be capable of practical and successful use. “Reduction to practice must produce something of practical use, coupled with a knowledge, preferably by actual trial, that the thing will work practically for the intended purpose. The conception may give rational hopes of future fulfilment of the purpose at which it aims; but if, as a matter of practice, it falls short of success, it is not a sufficient reduction to practice. Complete invention amounts to demonstration.” Sherwood v. Drewson, 29 App. D. C. 161.
In the case of Doyle v. Spaulding, 19 Fed. 144, a patent was assailed on the ground that, before the date of the invention covered thereby, certain persons residing in this country possessed knowledge of such invention, having used it in the city of Sheffield, England, before coming here. Answering this contention, the court said: “After a careful consideration of the provisions of the three sections of the patent act which bear upon the subject (secs. 4886, 4920, and 4923, Rev. Stat.), we are of the opinion that the use,'or a knowledge of the use, of an invention in a foreign country by persons residing in this country will not defeat a patent which has here heen granted to a bona fide patentee who; at the time, was ignorant of the existence of the invention or its use abroad.”
The right of appellee to a patent cannot be superseded by any act of appellant’s short of a reduction to practice prior to appellee’s filing date. Had his foreign invention been reduced to practice here prior to that date, appellee’s conceded lack of diligence would have been sufficient to have entitled appellant to the award of priority; but, inasmuch as his reduction to practice abroad cannot be considered, appellee must be regarded as the prior inventor.
The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings as by law required. Affirmed.