PNEUMATIC SCALE CORPORATION, Limited, v. AUTOMATIC WEIGHING MACH. CO.

(Circuit Court of Appeals, First Circuit. November 22, 1912.)

No. 959.

PATENTS (§ 328*)—INFRINGEMENT—AUTOMATIC WEIGHING MACHINE.

The Thomas patent, No. 766,004, for an automatic weighing machine, on which the approximate or preliminary load is obtained by a "time stream," the material being supplied to the receptacle for a predetermined interval of time, governed by the speed of revolution of a cam-shaft, which in each revolution, in conjunction with a spring, opens and closes a valve in the outlet of the hopper, is not infringed by the devices of the Pennock patent, No. 782,874, or the Doble patent, No. 720,008, both of which, instead of a time stream, employ the preliminary measuring devices of the prior art.

Appeal from the Circuit Court of the United States for the District of Maine; William L. Putnam, Judge.

Suit in equity by the Automatic Weighing Machine Company against the Pneumatic Scale Corporation, Limited. Decree for complainant, and defendant appeals. Reversed.

For opinion below, see 193 Fed. 76. See, also, 200 Fed. 572.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

William K. Richardson, of Boston, Mass. (J. Lewis Stackpole, of Boston, Mass., on the brief), for appellant.

Benjamin Phillips, of Boston, Mass. (Alfred H. Hildreth and Elmer P. Howe, both of Boston, Mass., on the brief), for appellee.

Before COLT, Circuit Judge, and ALDRICH and BROWN, District Judges.

COLT, Circuit Judge. This suit was brought for infringement of the Thomas patent, No. 766,004, for improvements in automatic weighing machines. The application was filed December 17, 1896, and the patent issued July 26, 1904.

In the proceedings under the original bill infringement was not denied, and the only defense relied upon was priority of invention by George W. Watson, to whom a patent had been issued for the same invention. Upon this issue, this court, on January 5, 1909, decided in favor of Thomas, and directed that a decree be entered for an injunction and account. 166 Fed. 288, 92 C. C. A. 206.

The case is now before the court upon a supplemental bill. This supplemental bill raises the single question whether the defendant's bucket wheel feed machine and screw feed machine infringe the Thomas patent. These machines were not before the court in the proceedings under the original bill.

The bucket wheel feed machine is shown in the Pennock patent, No. 782,874, dated February 21, 1905, and it is in evidence that this machine has been manufactured by the defendant since 1900. The screw feed machine is shown in the Doble patent, No. 720,008, dated February 10, 1903, and it is in evidence that this machine has been manufactured by the defendant since 1903.

The Thomas patent in suit relates to that class of automatic weighing machines which require two operations. By the first operation the approximate or preliminary load is obtained, and by the second operation the complete load. We are only concerned in this case with the first feature, or with the preliminary load mechanism. This is the main feature of novelty in the Thomas machine, and the question of infringement resolves itself into the single inquiry whether the defendant's machines which are now before the court contain this feature.

The preliminary load in an automatic weighing machine involves the problem of delivering a certain quantity of material from a hopper to a package. Before Thomas, the material was first delivered from the hopper to a measuring or weighing receptacle, and from that receptacle to the package. Thomas conceived the idea of doing away with all forms of intermediate measuring or weighing devices, and delivering the material direct from the hopper to the package by means of a stream flowing by force of gravity from the hopper to the package for a definite time. This is called in the patent a "time stream," whereby the material is supplied to the receptacle for "a predetermined interval of time."

In order to determine whether the defendant's machines contain this novel feature of the Thomas invention, it is necessary, first, to examine the Thomas patent, and to ascertain what the patentee meant by "time stream," whereby the material is supplied to the receptacle for "a predetermined interval of time."

The patent begins by stating the class of automatic weighing machines to which the invention relates:

"My invention relates to that class of automatic weighing machines in which, in order to combine speed with accuracy, each load is brought to the required size by means of two operations, during the first of which an approximate load is obtained quickly, and during the second of which the complete load is made up by means of a small or drip stream."

The patent then refers to the prior art:

"So far as I am aware, the approximate load has always been obtained hitherto either by a preliminary measuring or weighing operation accomplished by a measuring device or scale operating separately from the scale on which the final load is weighed or by cutting down the size of a single stream delivered to the scale prior to the completion of the load therein."

The patent then proceeds to state the purposes of the invention; the main purpose being to do away with all forms of preliminary measuring or weighing devices:

"My present invention is designed to simplify and otherwise to improve upon these prior machines, by doing away with all forms of preliminary measuring or weighing devices, as well as all devices for varying during the weighing operation the size of the stream delivered to the scale on which the complete weight is obtained, and also to produce a machine of increased capacity and rapidity of operation, without loss of accuracy in the results obtained."

The patent then states the main feature of the invention, which consists in obtaining the preliminary load by a "time stream"; the material being supplied to the receptacle for "a predetermined interval of time":

"To these ends a main feature of my invention may be stated, broadly, to consist in obtaining the approximate load by what may be termed a 'time stream,' material being supplied to the receptacle thereby for a predetermined interval of time, and in completing the load by means of a small or drip stream, delivered to the receptacle while supported upon a scale to which the partially filled receptacle is transferred; the drip stream being cut off by the tipping of the scale as soon as the load is completed. Preferably the arrangement is such that a preliminary approximate load may be delivered to each receptacle simultaneously with the completion of the previously obtained approximate load upon the scale, so that each complete load may be obtained in the time required for the operation of the drip stream alone by properly regulating the quantity delivered by the time stream. This latter quantity is preferably delivered through a valve arranged to be opened and closed automatically by the operation of the machine at the proper time, so that said quantity in the case of a given material will depend only upon two factors—namely, the size of the stream and the time during which it is allowed to run—and may readily be adjusted by varying either of said factors, preferably the former."

The mechanism described in the patent by which the preliminary load is obtained by a "time stream" is illustrated in the following diagrams:

In describing this preliminary load mechanism, the patent says:

"The main valve 6 is provided with an arm 23, connected by a link 22 to a lever 21, which is journaled on a fixed shaft 30 and is adapted to be moved forward by the action of a cam 24, secured to the shaft 8 and herein shown as bearing against a rearwardly extending projection formed on said lever. The backward movement of the lever 21 may be affected by means such as a spring 25, secured thereto and to the framework of the machine. These parts are so arranged that a forward movement of the lever 21, due to the action of the cam 24, will open the valve 6, and said cam has a comparatively long working surface, so that it will hold the valve 6 open during the greater part of each revolution of the shaft 8; said valve being closed by the spring 25 whenever such action is permitted by the cam 24. As thus constructed it will be seen that during each revolution of the shaft 8 the main valve 6 will be opened, and will permit a stream of material to pass through it during a definite time, at the end of which time said valve will be automatically closed. The rate at which the material will flow through this valve when open may be regulated with accuracy by the corresponding supplementary valve 7, so that by means of the mechanism just described a succession of loads approximately equal to each other and to the desired weight may be delivered to a corresponding series of receptacles placed beneath the main valve 6."

In this description it may be noted that the patentee says:

"As thus constructed it will be seen that during each revolution of the shaft 8 the main valve 6 will be opened, and will permit a stream of material to pass through it during a definite time, at the end of which time said valve will be automatically closed."

This language, when read in connection with the other parts of the specification and with the drawings, makes clear the sense in which "time," "a predetermined interval of time," and "time stream" are used in the Thomas patent.

"Time," in the sense of the Thomas patent, is the elapsed time which it takes for each revolution of the shaft 8, during a definite portion of which time the "main valve 6 will be opened, and will permit a stream of material to pass through it during a definite time, at the

end of which time said valve will be automatically closed." For example, if the machine is so organized that the shaft 8 makes a complete revolution in one second, then, by means of the cam 24 upon the shaft 8 and the connecting levers and spring, the main valve 6 will be open a definite portion of that second, and so "permit a stream of material to pass through it during a definite time, at the end of which time said valve will be automatically closed."

"A predetermined interval of time," in the sense of the Thomas patent, is the interval of time occupied during the greater portion of each revolution of the shaft 8, or the interval of time during which in each revolution of the shaft 8 the cam 24 is in operation to open and close the valve 6, thereby permitting the "time stream" to flow and to supply the "material to the receptacle for a predetermined interval of time." For example, if the machine is so organized that the shaft 8 makes a complete revolution in one second, then the predetermined interval of time would be that portion of a second during which the cam 24 in the course of each revolution of the shaft 8 operates to open and close the valve 6. It is during this predetermined interval of time that the material is supplied to the receptacle by the "time stream."

"Time stream," in the sense of the Thomas patent, is a stream, flowing directly by force of gravity into the receptacle beneath, whose time of flow is regulated by the interval of time occupied during the greater portion of the revolution of the shaft 8, or the interval of time during which the cam 24 upon each revolution of the shaft 8 operates to open and close the valve 6. For example, if the machine is so organized that each revolution of the shaft 8 takes one second, then the time stream will flow that portion of a second in each revolution of the shaft 8 during which the cam 24 operates to open and close the valve 6.

To summarize: "Time," in the sense of the Thomas patent, signifies the period of time occupied by each revolution of the shaft 8, and starting from this definite period of time we have the "time stream" and the material supplied to the receptacle for "a predetermined interval of time." In other words, the "time stream" and "a predetermined interval of time" are governed absolutely by the interval of time occupied by each revolution of the shaft 8, and any variation in the time of such revolution, whether greater or less, other conditions remaining the same, will vary the quantity of material delivered by the "time stream" to the receptacle beneath during each operation of the machine.

The claims of the Thomas patent in issue are 1, 3, 5, 6, and 7. Since we are of the opinion that all of these claims include the fundamental feature of the Thomas invention, we will only cite claim 1:

"1. In an automatic weighing apparatus, the combination with two feed chutes, each adapted to discharge directly into a different receptacle and both in succession directly into the same receptacle, a support located beneath one of said feed chutes, a scale located beneath the other feed chute arranged to receive a receptacle from said support, means for cutting off the flow from one feed chute after it has been open for a predetermined interval of time, and means operating with the tipping of the scale for cutting off the flow from the other feed chute."

The contention of the complainant is that both the defendant's bucket wheel feed machine and screw feed machine contain the fundamental feature of the Thomas patent; in other words, that there is found in these machines the "time stream" and the material supplied to the receptacle for "a predetermined interval of time," in the sense of the Thomas patent.

On the other hand, the defendant contends that these machines are not "time stream" machines, but are in fact machines having preliminary measuring devices which measure a definite quantity of material and deliver it to the receptacle below. In a word, the defendant's contention is that these machines belong to the type of prior machines containing preliminary measuring devices to which reference is made in the Thomas patent, and which are illustrated in the annexed diagrams of the Smyser machine.

In this machine, a is the preliminary measuring receptacle which is interposed between the hopper b and the lower receptacle c; and, as we have seen, the Thomas machine does away with any such preliminary measuring device.

It remains to consider whether the defendant's machines employ the "time stream" feature of the Thomas patent, or whether they belong to the type of machines which employ preliminary measuring devices.

The bucket wheel feed machine is illustrated in the following cuts:

FIG. 1

The first of these cuts shows the hopper and bucket wheel. The second is a reproduction of Fig. 1 of the Pennock patent, No. 782,-874, and shows the preliminary load mechanism.

Coming now to a description of this mechanism, we find, as appears from the Pennock patent, that below the hopper *1* is a cylindrical chamber *14*, in which revolves a shaft *15*, having four blades *17*, the outer edges of which terminate as close as possible to the curved wall of the chamber. The shaft *15* has a sprocket wheel *19* connected by the chain *20* with the sprocket wheel *21* on the shaft *110* connected by a clutch with the driving shaft *112*. This secondary shaft *110* makes one revolution at each operation of the machine.

Now it is apparent that the shaft *110*, which corresponds with the shaft *8* of the Thomas machine, does not regulate the amount of material delivered to the receptacle below by the time which it occupies during each revolution of the shaft or during each operation of the machine. On the contrary, the same quantity of material will be delivered to the receptacle below, other conditions remaining the same, whether the shaft *110* occupies one second or one hour in each revolution.

Since the quantity of material delivered to the receptacle below is in no way dependent upon the time occupied by each revolution of the shaft *110*, it follows that the defendant's bucket wheel feed machine does not contain the fundamental feature of the Thomas patent. In other words, there is nothing in this machine which corresponds to the "time stream" whereby the material is supplied to the receptacle for "a predetermined interval of time," in the sense of the Thomas patent. This time feature of the Thomas patent, as we have seen, is governed absolutely by the time occupied by each revolution of the shaft *8*, and this time feature is absent from the bucket wheel.

feed machine, since the time occupied by each revolution of the shaft *110* in no way affects the quantity of material delivered to the receptacle below.

In the bucket wheel feed machine the quantity delivered to the receptacle below during each operation of the machine is governed by the capacity of the buckets and the number of buckets which are emptied into the receptacle. The fact that the bucket wheel shaft *15* makes one revolution or two revolutions or a quarter revolution during one revolution of the shaft *110*, depending upon the relative sizes of the two sprocket wheels *19* and *21*, in no way changes the essential character of the bucket wheel as a measuring receptacle which measures the amount of the preliminary load, as distinguished from the "time stream" of the Thomas patent which delivers the material to the receptacle for "a predetermined interval of time."

The screw feed machine is illustrated in the following cut, which is Fig 8 of the Doble patent, No. 720,008:

In this device the screw or worm is rotated by the shaft *134*, and this shaft in turn is driven from the secondary shaft *110* by means of two sprocket chains, *136* and *191*, as shown in Fig. 2 of the patent. This shaft *110* makes only one revolution while the hopper is feeding, and is then unclutched from its driving shaft.

It is true that the number of turns made by the shaft *134*, which controls the screw *131*, may be determined by changing the sprockets or by a finer adjusting mechanism which it is not necessary to describe; at the same time, it is also true that the time that it takes the shaft *110*, which corresponds with the shaft *8* of the Thomas machine, to make one revolution will in no way affect the amount of the preliminary load delivered to the receptacle below. We find, therefore, that the screw feed machine possesses essentially the same mode of operation as the bucket wheel feed machine, and that it is fundamentally a preliminary load measuring device in the sense of the prior art, and that it does not contain the "time stream" or the "predetermined interval of time" features of the Thomas patent.

For these reasons we find no infringement of the Thomas patent, and it follows that—

The decree of the Circuit Court is reversed, and the case is remanded to the District Court, with directions to enter a decree dismissing the bill; and the appellant recovers its costs of appeal.